790 A.2d 186 (2002)
347 N.J. Super. 350
William HANCOCK and John Warner, Plaintiffs-Appellants,
v.
BOROUGH OF OAKLYN, Chief Ronald J. Frumento, Mayor Vincent Sciboni, Lieutenant Christopher Ferrari, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted January 9, 2001.
Decided February 5, 2002.
*188 Clifford L. Van Syoc, Cherry Hill, for appellants (James E. Burden, on the brief).
Brown and Connery, for respondents (William M. Tambussi, Westmont and Diane S. Kane, on the brief).
Before Judges BAIME, NEWMAN and AXELRAD.
*187 The opinion of the Court was delivered by AXELRAD, J.T.C. (temporarily assigned).
Plaintiffs, William Hancock and John Warner, appeal from an order granting summary judgment and dismissing their complaint. Plaintiffs' complaint alleges that defendants, Borough of Oaklyn, Chief Ronald J. Frumento, Mayor Vincent Sciboni, and Lieutenant Christopher Ferrari, retaliated against them in violation of the New Jersey Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to-8.
*189 On June 27, 1997, Hancock, a sergeant in the Oaklyn Police Department, came across a $600 payment voucher to Ferrari, a lieutenant in the department, for his work on a DWI patrol shift. Hancock believed that Ferrari did not perform the work because Ferrari was on special assignment with the Camden County Prosecutor's Office at the time. Hancock communicated this information to Warner, a patrolman in the Oaklyn Police Department. Plaintiffs reported their suspicions of Ferrari's potential criminal misconduct to Mayor Sciboni and then to Investigator Simonini of the State Attorney General's Office. As a result of plaintiffs' disclosure of two potentially questionable payment vouchers for Ferrari, in August 1997 the Attorney General's Office seized records from the Oaklyn Police Department to further its investigation.[1]
In early 1998, both plaintiffs were the subject of an Oaklyn disciplinary hearing alleging violations of a number of police departmental policies. During the course of that disciplinary matter, plaintiffs were represented by Barbara M. Paul, Esquire. Sometime in April 1998, prior to the commencement of the formal hearing, plaintiffs' attorneys in this action, Van Syoc Chartered, sent a letter to the Oaklyn municipal solicitor on behalf of the officers, claiming that the proceeding was in violation of CEPA, and requesting an adjournment of the hearing. Notwithstanding the letter, the disciplinary hearing commenced before John McFeeley, III, Esquire on April 10, 1998, was adjourned, and concluded on June 26, 1998. On July 6, 1998, Mr. McFeeley issued a written opinion wherein Warner and Hancock were found guilty of various departmental violations. These disciplinary actions which resulted in brief suspensions from work, were appealed, and on de novo review, the findings on all the disciplinary charges were sustained by the Law Division. On November 9, 1999, Judge Mariano entered the following order, which was not appealed:
(1) The disciplinary charge against Sgt. Hancock for violating G.O. 95-10-23(02), wherein he went to the Borough of Oaklyn Mayor Vincent Sciboni to discuss an ongoing investigation of the Oaklyn Police Department involving the alleged misuse of DWI funds by then Lt. Christopher Ferrari is SUSTAINED;
(2) The disciplinary charge against Sgt. Hancock for violating G.O. 95-10-23(02) ("Organizational Structure Chain of Command"), wherein he went to the Borough of Oaklyn Councilwoman Linda Hibbs to discuss an ongoing investigation of the Oaklyn Police Department involving the alleged misuse of DWI funds by Lt. Ferrari is SUSTAINED;
(3) The disciplinary charge against Ptl. Warner for violating G.O. 95-10-23(02) ("Organizational Structure Chain of Command"), wherein he went to Oaklyn Mayor Sciboni to discuss an ongoing investigation of the Oaklyn Police Department involving the alleged misuse of DWI funds by Lt. Ferrari is SUSTAINED;
(4) The disciplinary charge against Ptl. Warner for conducting private business at Fleetway Chrysler Plymouth on August 26, 1997, while on duty and failing to conduct himself in accordance with high ethical standards during said incident, in accordance with Oaklyn Police Department Rules and Regulations 5.6.3 and 4.1.6, respectively, are SUSTAINED;

*190 (5) The disciplinary charge against Ptl. Warner for violating G.O. 95-10-23(02) ("Organizational Structure Chain of Command"), wherein he went to the Mayor Sciboni to discuss disciplinary action taken by then Chief Ronald Frumento involving the aforementioned Fleetway Chrysler Plymouth incident is SUSTAINED;
(6) The five (5) working days suspension without pay imposed against Sgt. Hancock for the aforementioned violations is SUSTAINED;
(7) The seven (7) working day suspension without pay imposed against Ptl. Warner for his violations of G.O. 95-10-23(02) is SUSTAINED;
(8) The eight (8) working day suspension without pay imposed against Ptl. Warner for his violation of Rules 5.6.3 and 4.1.6 is SUSTAINED.
The record also indicates that on December 17, 1999, counsel reached an agreement on disciplinary charges filed against Warner on September 24, 1998, whereby the charge of failing to timely complete records was sustained and the other charges were dismissed. Additionally, it was agreed by the parties and specifically acknowledged by Warner that the facts giving rise to these disciplinary charges filed against Warner and the dismissal of the charges would not be evidential in the CEPA action.
Plaintiffs filed a complaint on May 22, 1998, alleging that, in response to their "protected conduct in reporting potential criminal misconduct," they were subject to "a course of malicious retaliation in violation of CEPA" in the form of fraudulent disciplinary charges being brought against them by defendants, as well as being the victims of other disparate treatment by defendants, in particular, Police Chief Frumento. They claim that Frumento is a "close friend" of Ferrari's and when he learned of their role in "blowing the whistle" and precipitating the investigation, he began retaliating against them.
Hancock claims the following acts of retaliation:
(1) In August 1997, Ferrari ordered Hancock not to discuss the Attorney General's investigation with anyone in the Oaklyn Police Department;
(2) Shortly after initiation of the investigation, Ferrari issued an order prohibiting Hancock from going to the midget football field to watch his team while on lunch break, while another officer who routinely went during his lunch break was not given a similar order;
(3) On September 3, 1997, Ferrari ordered Hancock to perform a street light survey, which he had never performed and which was "a demeaning task designated to punish and humiliate Hancock[;]"
(4) On September 12, 1997, Hancock's desk was moved out of Detective Abbate's office after Frumento was overheard by an Oaklyn police officer saying "we'll fix him, we'll move his desk out of here;"
(5) On October 6, 1997, Frumento issued a memo to Hancock, chastising him for violating the "chain of command" in reporting to the Mayor the potential misconduct, and threatening to file additional charges;
(6) On December 11, 1997, Frumento wrote on a solicitation mailing sent to Hancock at the police department that Hancock was required to change his address so that no personal mail was delivered to the department, even though other officers received personal mail at the station;
(7) On December 22, 1997, Frumento refused Hancock permission to switch shifts with another patrolman;

*191 (8) After observing plaintiffs and another officer dining together, Frumento issued an order that no officers were to take meal breaks at the same time;
(9) After he observed plaintiffs conversing, Frumento issued a memo prohibiting officers from meeting except for police-related business;
(10) Disciplinary charges were filed against Hancock for failing to back up officer Dolgos and for violating the chain of command regulation by disclosing Ferrari's potential misconduct to the Mayor. (Hancock was found not guilty of failing to back up the officer. The other charge was sustained by the Law Division.);
(11) On March 23, 1998, Hancock was served with fourteen disciplinary charges signed by Frumento which were brought by his subordinate, Patrolman Scheick, which violated the chain of command. (These charges were addressed at a mediation and Scheick decided not to pursue the charges).
Warner claims the following acts of retaliation:
(1) Warner was sent out on one occasion for not wearing body armor, as required by departmental policy, even though other officers "routinely violated" the requirement of wearing their vests;
(2) After he observed plaintiffs conversing, Frumento issued a memo prohibiting officers from meeting except for police-related business;
(3) A disciplinary charge was filed against Warner as a result of an incident occurring on August 27, 1997 at Fleetway Chrysler Plymouth. (This charge was sustained by the Law Division.);
(4) Additional disciplinary charges were filed against Warner alleging he was conducting personal business on borough time and breaking the chain-of-command. (This charge was sustained by the Law Division.);
(5) On September 24, 1998, Warner was charged with departmental violations involving evidence and property procedures and record report preparation maintenance. (Pursuant to December 1999 agreement of counsel in the disciplinary action, these charges are not evidential in the CEPA action.).
In its summary judgment motion, defendants claimed there was no admissible evidence demonstrating that Hancock or Warner were treated any differently from the other officers in the department who did not "blow the whistle." Defendants responded to each of plaintiffs' allegations of retaliatory conduct based on information obtained in plaintiffs' depositions. They asserted the following as to Hancock:
(1) Ferrari's verbal order to Hancock not to speak with other members of the police department regarding the Attorney General's investigation was in accordance with directives given to Ferrari by the Attorney General's Office;
(2) Hancock admitted that he had no knowledge that Officer Riley ever visited the midget football field while on duty;
(3) In response to a request by the Oaklyn Borough Director of Public Safety that the street light survey be conducted, Ferrari issued the directive for Hancock to have his squad perform the survey over the course of its tour of duty. The survey took a total of ninety minutes to perform, fifty minutes of which were performed by Hancock himself;
(4) Abbate needed more space to conduct interviews and other desks in the squad room were moved around during the time Hancock's desk was moved;
(5) Hancock admitted that he had no personal knowledge that other officers ever received junk mail at work;

*192 (6) Hancock admitted that he never asked Frumento for the shift change, but Officer Dolgos did, and that Frumento denied Dolgos' request;
(7) The directives directing officers from eating together and requiring them to document meetings were addressed to everyone in the department. Additionally, Hancock conceded that he was not even certain that Frumento saw him dining with Warner and Officer Moore prior to writing the memo.
As to Warner, defendants note that this was his second notice of violation of the departmental policy mandating the wearing of ballistic body armor, and he was given yet another chance to avoid being formally charged by future compliance with the policy. In fact, for his first violation, he was sent home from duty by Hancock. Moreover, there was a judicial determination sustaining the disciplinary charges filed against both plaintiffs.
In granting defendants' motion for summary judgment, Judge Supnick found that the claimed retaliation by defendants was not cognizable under CEPA. On appeal, plaintiffs assert that the trial court erred in failing to require defendants to comply with the specific procedural requirements of Rule 4:46-2 and in granting defendants' motion for summary judgment. We disagree and affirm.
"CEPA is designed to protect employees who blow the whistle on illegal or unethical activity committed by their employers or co-employees." Estate of Roach v. TRW, Inc., 164 N.J. 598, 609-10, 754 A.2d 544 (2000); see also Higgins v. Pascack Valley Hosp., 158 N.J. 404, 417, 730 A.2d 327 (1999); Barratt v. Cushman & Wakefield, 144 N.J. 120, 127, 675 A.2d 1094 (1996).
The relevant sections of the CEPA statute, N.J.S.A. 34:19-3, provide:
An employer shall not take any retaliatory action against an employee because the employee does any of the following:
a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer... that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law...;
b. Provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law....
To state a claim under CEPA, a plaintiff must introduce evidence sufficient to show that:
(1) he or she reasonably believed illegal conduct was occurring;
(2) he or she disclosed or threatened to disclose the activity to a supervisor or public body;
(3) retaliatory employment action was taken against him or her; and
(4) there was a causal connection between the whistle-blowing and the adverse employment action.
[Kolb v. Burns, 320 N.J.Super. 467, 476, 727 A.2d 525 (App.Div.1999).] Defendants do not dispute that the activities in which plaintiffs were involved constitute protected conduct within the purview of N.J.S.A. 34:19-3. The primary question presented to the Law Division was whether plaintiffs introduced sufficient evidence to establish a prima facie case and create a genuine issue of material fact as to the third prong, i.e., whether retaliatory employment action was taken against them. The court correctly concluded that, even conceding plaintiffs' various contentions, as a matter of law they are not cognizable retaliatory actions under CEPA.
*193 N.J.S.A. 34:19-2e specifically defines "Retaliatory action" as "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment."
Neither plaintiff contends that he was discharged or demoted in retaliation for reporting his belief that Ferrari sought overtime payments for patrols that he did not perform.[2] In addition to his claim of lost pay in connection with the five-day disciplinary suspension, Hancock alleges damages for emotional distress, including anxiety, stress, and sleeplessness, and counsel fees. In addition to his claim of lost pay in connection with the fifteen-day disciplinary suspension, Warner alleges damages for emotional distress and mental anguish, and counsel fees.
In Keelan v. Bell Communications Research, 289 N.J.Super. 531, 539, 674 A.2d 603 (App.Div.1996), we found "no retaliatory action until plaintiff's actual discharge[,]" concluding that "[t]he definition of retaliatory action speaks in terms of completed action. Discharge, suspension or demotion are final acts. `Retaliatory action' does not encompass action taken to effectuate the `discharge, suspension or demotion.' " Nor did defendants take "other adverse employment action ... in the terms and conditions of [plaintiffs'] employment." N.J.S.A. 34:19-2e. Viewed in the light most favorable to plaintiffs, the non-moving parties, the allegations of retaliation are minor and have no impact on either plaintiffs' compensation or rank. Zamboni v. Stamler, 847 F.2d 73, 82 (3d Cir.), cert. denied, 488 U.S. 899, 109 S.Ct. 245, 102 L. Ed.2d 233 (1988) ("predict[ing] ... that the New Jersey Supreme Court would confine the tort of unlawful retaliation to formal personnel actions that have an effect on either compensation or job rank....").
Neither Warner nor Hancock suffered any adverse effect on their respective compensation or rank by being told to wear a protective vest, not discuss an ongoing Attorney General's investigation, or respond to public safety concerns about the operability of street lights.
Nor can defendants' treatment of plaintiffs be considered "virtually equivalent to discharge." Ibid.; see also Pierce v. Ortho Pharm. Corp., 84 N.J. 58, 417 A.2d 505 (1980) (claim for retaliation is not cognizable for each and every minor disciplinary action by employer but rather for formal disciplinary actions having effect on either compensation or job rank). There is no adverse employment action that impacts in a substantial way on either plaintiffs' work or conditions at work or constitutes a de facto termination. Plaintiffs' allegations of retaliatory action relate either to general actions that made plaintiffs' jobs mildly unpleasant or specific disciplinary charges brought by defendants against plaintiffs. With regard to the disciplinary charges, our Supreme Court has made it clear that filing a CEPA claim "does not insulate the complaining employee from discharge or other disciplinary action for reasons unrelated to the complaint." Higgins, supra, 158 N.J. at 424, 730 A.2d 327. Plaintiffs cannot claim that the substantiated disciplinary charges and resulting brief suspensions from work were retaliatory. Hancock and Warner acknowledge that they were afforded a hearing on the disciplinary charges, were represented by counsel at the hearing, *194 were found guilty of the charges by the hearing officer, that the charges and disciplinary actions were sustained by the Law Division, and that no appeals were filed.
The case law also strongly suggests that plaintiffs' emotional distress alone is not a cognizable injury within the CEPA context. See, e.g., Kadetsky v. Egg Harbor Township Bd. of Educ., 82 F.Supp.2d 327, 340 (D.N.J.2000) (to constitute a cognizable injury under CEPA plaintiff must suffer "lasting prejudice").
Plaintiffs also fail to establish a factual nexus between their protected activity under CEPA and the alleged retaliatory conduct. Temporal proximity, standing alone, is insufficient to establish causation. See Bowles v. City of Camden, 993 F.Supp. 255, 263-64 (D.N.J.1998). Although there was most likely animosity between plaintiffs, Chief Frumento, and Lieutenant Ferrari as a result of the investigation, plaintiffs failed to demonstrate that they were treated differently from any of the other officers in the department. Most of the orders given by plaintiffs' supervisors were general in nature and applied to every officer in the department, while other orders appropriately addressed safety concerns.
Nor is this a case where causation can be inferred because plaintiffs became the subject of disciplinary charges after their whistle blowing was discovered. Warner acknowledged that he had previously been the subject of several administrative charges and reprimands, including a ten-day suspension initiated by Hancock for leaving a loaded, duty issued handgun in the back of a patrol car; being sent home from duty by Hancock for failing to wear protective body armor; being reprimanded by Hancock for allowing a prisoner to walk in on Hancock while he was in the bathroom; and having received a written warning from Hancock regarding a February 27, 1996 incident that involved endangering the welfare of a child. Most importantly, the disciplinary actions which plaintiffs asserted as retaliatory were substantiated, and there was a final judicial determination sustaining the findings and suspensions.
Additionally, plaintiffs' procedural claim is without merit. In their summary judgment motion, defendants set forth the various material facts that were undisputed with references to the record. Defendants' failure to set them forth in separately numbered paragraphs is not a material deviation under Rule 4:46-2 which should deny defendants the relief that they were properly granted.
Affirmed.
NOTES
[1] The Attorney General's investigation was subsequently closed because of insufficient evidence to support the allegation that Ferrari was paid from DWI funds for work that he did not perform.
[2] Hancock's last day of work at the Oaklyn Police Department was in July of 1998 as a result of an injury to his right wrist in September of 1994. Hancock obtained a disability pension unrelated to any claims involved in this lawsuit.