*742 OPINION OF THE COURT
DITTER, District Judge.
Appellant, Jacqueline Smith, a sergeant on the East Greenwich Police Department, brings this appeal from a decision of the District Court granting summary-judgment in favor of the appellees, the Township of East Greenwich, the East Greenwich Police Department, Police Chief William E. Giordano, and Deputy Chief Scott A. Goess, on all counts raised in Smith’s complaint. We will affirm the thorough and well-reasoned decision of the District Court.
I. Factual and Procedural Background
Jacqueline Smith has been a police officer with the Township of East Greenwich since August 1988. During her tenure, Smith has been the only female officer employed by the township.
In 1994, William Giordano was appointed chief of police. Thereafter, a lieutenant position became available in the department. Chief Giordano amended the position criteria to include the requirement that applicants for the position must have three years of supervisory experience. Smith was ineligible because she did not have this experience. Goess, who was then a patrolman and was the only applicant, was promoted to lieutenant. Smith did not challenge this promotion.
In 1996, Chief Giordano implemented a new promotional procedure for the position of sergeant by specifying certain evaluative criteria and assigning each category a weight. The criteria were as follows: psychological assessment (15%); written examination (20%); oral examination (20%); personnel file and profile (20%); seniority (5%); recommendation of the Chief (10%); and Township Committee interview (10%). Smith and four other officers applied for the promotion. Smith received the highest overall score and was recommended by Chief Giordano for the promotion. In his letter of recommendation, Chief Giordano expressed his confidence in Smith’s abilities and noted that her integrity, loyalty, and dedication to duty were exemplary. Smith was promoted to sergeant on January 14,1997.
In 1999, Smith had a child. When Smith returned to work from maternity leave, she was permitted to switch shifts with another sergeant to accommodate the needs of her new family. Smith thanked Chief Giordano for his approval of this shift change and commented on the department’s progressiveness and sensitivity to family issues.
In December 1999, Smith became the subject of an internal affair’s investigation. Lieutenant Goess conducted the investigation and recommended disciplinary action be taken against Smith. On December 9, 1999, an informal hearing was held and Smith was found guilty of four charges of falsifying reports, one charge of improper shift relief, and one charge of failing to properly supervise a probationary employee. Chief Giordano offered Smith a one-day suspension and a one-day loss of time as the discipline. Smith opted to pursue her right to a hearing before the East Greenwich Township Committee. Hearings were held before the township committee over a period of time from July 2000 through October 2000. The township committee found Smith guilty of all charges and suspended her for seven days on each of the four falsifying patrol reports charges, one day for leaving a shift early, and one day for improper supervision of a probationary officer. The suspensions were imposed concurrently.
On August 21, 2000, Smith filed a complaint with the Equal Employment Opportunity Commission (“EEOC”), challenging this disciplinary action and alleging disparate treatment and sexual harassment in violation of Title VII of the Civil Rights Act. The EEOC was “unable to conclude *743 that the information obtained establishes violations of statutes” and closed her file. Smith did not pursue her claims further.
Smith was the subject of a second internal affairs investigation that began in 2003. This investigation resulted from the complaints of two of Smith’s subordinate police officers, John Seas and William Crothers. These officers complained to now Captain Goess that Smith failed to back up their calls. After an investigation, eleven charges were filed against Smith that included failing to back up officers, ordering an officer to change his report, lack of candor during the investigation, and failure to supervise.
An independent hearing officer, Daniel Bernardin, Esq., conducted the hearing on these charges over a period of several months from July 2004 through October 2004. Smith claimed the allegations were motivated by gender bias and were an effort by the department and Captain Goess to thwart her career advancement.
In November 2004, while this disciplinary action was still pending, a lieutenant position became available. On December 8, 2004, Chief Giordano changed the criteria for promotion to both the lieutenant and sergeant positions.[1] Smith confronted Chief Giordano with her objections to the changes and she contends he yelled at her and stated, “I’m sick of hearing it. I’ve been chief here long enough to know what’s important.” (J.A. 81.)
Smith applied for the lieutenant position in December 2004. Smith had the highest cumulative score in the written examination, oral examination, and township interview categories. She received zero out of fifty points for the recommendation of the chief (which accounted for 25% of her total score), and zero of twenty points for her discipline record (one subsection of the personnel file and profile section).
On February 23, 2005, Hearing Officer Bernardin issued his decision finding Smith guilty on two[2] of the disciplinary charges: failing to supervise Seas after he made an arrest and ordering Crothers to falsify a report.[3] Bernardin imposed a penalty of concurrent ninety-day suspensions on each charge. Bernardin found no merit to Smith’s claims of gender bias on the part of either the department or Captain Goess.[4]
*744 By letter dated March 8, 2005, Chief Giordano informed Smith that she had not been selected by the Township for the lieutenant position. A male applicant was given the promotion. Smith filed a complaint in the United States District Court for the District of New Jersey on August 25, 2005. Smith claimed violations of 42 U.S.C. § 1983 (Count One), the New Jersey Law Against Discrimination (“NJLAD”), N.J. Stat. Ann. §§ 10:5-1 to - 42 (Count Two), the Conscientious Employee Protection Act (“CEPA”), N.J. Stat. Ann. §§ 34:19-1 to -8 (Count Three), and intentional infliction of emotional distress (Count Four). Defendants’ motion for summary judgment was granted on October 30, 2007. This appeal followed.
II. Discussion
We have jurisdiction over this appeal of the final order of the District Court pursuant to 28 U.S.C. § 1291. Our review of an order granting summary judgment is plenary. Summary judgment is proper “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(c).
Smith raises seven interrelated issues on appeal that essentially challenge the District Court’s conclusion that there were no genuine issues of material fact that would permit the jury to find in favor of Smith on any of her four counts. Smith asserts that she presented sufficient evidence to raise an issue of material fact with regard to her claim that the defendants’ reasons for pursuing the 1999 and 2004 disciplinary actions, and for not promoting Smith to lieutenant in 2005, were merely a pretext and these acts were motivated by gender discrimination. She contends the District Court made the same error in finding that she did not establish a prima facie case under the CEPA. In support of these assertions, Smith points to what she describes as a pattern of discriminatory conduct that began in 1994 when Giordano became chief and that was evidenced by her ineligibility for certain promotions based on changing criteria and the disciplinary actions taken against her.
The District Court analyzed her discrimination complaints under the theory of disparate treatment. First, the District Court applied the two-year statute of limitations of both § 1983 and NJLAD and concluded that all of her claims were barred except for the failure to promote her to lieutenant in 2005 and for the disciplinary action that was initiated for conduct that occurred in 2003. The District Court properly rejected Smith’s continuing violation theory because each alleged act of discrimination was a discrete employment act — either a failure to promote or a disciplinary action. See Nat’l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113-14, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (“Each discrete discriminatory act starts a new clock for filing charges alleging that act.... Discrete acts such as ... failure to promote ... are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable ‘unlawful employment practice.’ ”); O’Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir.2006) (“Morgan established a bright-line distinction between discrete acts, which are individually actionable, and acts which are not individually actionable but may be aggregated to make out a hostile work environment claim. The former must be raised within the applicable limitation period....”)
The District Court considered Smith’s remaining § 1983 and NJLAD claims together as they arise out of the same actions and are reviewed under the standard *745 set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Thus, Smith was required to establish that she received different treatment from that received by other officers similarly situated and that the disparate treatment was based on her gender.
A. Failure to Promote
The District Court found Smith had established the minimal requirements of a prima facie case of discrimination because she had demonstrated that she was sufficiently qualified to be considered for the position of lieutenant and the promotion was given to a male applicant. We agree. Smith was the highest scoring applicant on her oral and written evaluations, and it was not asserted that her disciplinary record alone would disqualify her for this position. The subjective nature of the chiefs recommendation renders it inappropriate for consideration at the prima facie stage of the evaluation. See Ezold v. Wolf Block, Schorr & Solis-Cohen, 983 F.2d 509, 523 (3d Cir.1992) (a denial of promotion based on disputed qualifications will satisfy the prima facie stage if there was some objective evidence that the plaintiff was qualified to be among the candidates considered).
Thus, the inquiry turns to whether the defendants established a legitimate, nondiscriminatory reason for their actions. If the defendants meet their burden, Smith then has the opportunity to demonstrate that the defendants’ reasons are a mere pretext. To establish pretext, Smith “must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer’s articulated, legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer’s action.” Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir.1994).
The record established that the promotional criteria for lieutenant and sergeant were changed just after the November 2004 announcement of a lieutenant position opening. Chief Giordano testified that he changed the criteria to place more emphasis on an officer’s work history than on his or her ability to score well on examinations. Smith had the highest scores on the oral and written examinations, but the total weight was now 25% rather than 40%, with a maximum point value of 25 for each category. The weight assigned to the personnel file and profile was changed from 20% to 40%, with a maximum value of 80 points assessed by evaluating various subcategories. In the discipline record subcategory an applicant could earn a maximum of twenty points but Smith received no points. The chiefs recommendation was 25% of the evaluation with a maximum of 50 available points. Smith also received a zero in this category. Smith was the most senior candidate applying for this position, but consistent with Standard Operating Procedures (“SOP”) # 85[5] promulgated in 1996, seniority was no longer a separate category considered *746 for promotion. The defendants cite Smith’s disciplinary record, including the charges that were pending at the time she applied for this position, as supporting her scores. We agree with the District Court that the defendants have articulated legitimate, non-discriminatory reasons for not promoting Smith.
The burden now shifts to Smith to establish that the defendants’ reasons are mere pretext. In this regard, “Smith does contend that Giordano’s action in allocating ‘zero’ points in the ‘Recommendation of Chief section of the evaluative criteria, after increasing its weight ... evidences pretext.” (Appellant’s Reply Br. 4.) Instead, she relies on “a myriad of additional evidence from which a reasonable fact finder could find pretext.” (Appellant’s Reply Br. 4.) Smith contends the following facts support a finding of pretext: (1) Chief Giordano’s addition of three years supervisory experience to be eligible for a promotion to lieutenant in 1994; (2) his 1994 promotion of a Goess, a male patrolman, to lieutenant prior to the written examination requirement; (3) the 1996 promulgation of SOP # 85 limiting applicants promotion to the next consecutive rank; (4) the 2004 change in the promotional criteria for sergeant and lieutenant to increase the weight of the chiefs recommendation and the subjective nature of the recommendation; and (5) his manipulation of the promotional criteria in 2004 to preclude any opportunity for Smith to meet the requirements for promotion to lieutenant. (Appellant’s Reply Br. 5-6.)
Smith contends that these promotion criteria changes were really Chief Giorda-no’s way of preventing her from advancing within the department. She contends that her twenty-three years in police work, with eight years as a sergeant, and her superior examination scores are sufficient to raise an issue as to the bias of the chiefs subjective ratings. Smith does not dispute her disciplinary record, or that she was the subject of a disciplinary hearing at the time Chief Giordano modified the promotional criteria for supervisory positions and made his recommendation.
These assertions do not suggest that the new promotional criteria, or Smith’s score under those criteria, were a pretext for discrimination. The flaw in Smith’s claims under both federal and New Jersey law is that she has not shown any evidence that the new promotional criteria were inappropriate. Fuentes, 32 F.3d at 765; Jason v. Showboat Hotel & Casino, 329 N.J.Super. 295, 747 A.2d 802, 809 (N.J.Super.Ct.App.Div.2000) (noting that state law evaluation is consistent with Title VII and that the court will not second guess a good faith business judgment of highly subjective criteria absent some evidence of impermissible motives). Further, Smith has not shown that male candidates received satisfactory evaluations from Chief Giorda-no despite comparable disciplinary records. Without such evidence, there is no basis on which a fact finder could conclude that the defendants were motivated by a gender bias or even consider whether Smith was the more qualified candidate. As we stated in Ezold,
Where an employer produces evidence that the plaintiff was not promoted because of its view that the plaintiff lacked a particular qualification the employer deemed essential to the position sought, a district court should focus on the qualification the employer found lacking in determining whether non-members of the protected class were treated more favorably.
983 F.2d at 528.
B. Discriminatory Disciplinary Charges
Smith also contends that she had been subjected to discriminatory and retaliatory *747 disciplinary actions. Smith concedes that her claims concerning disciplinary actions taken prior to the 2003 investigation are time-barred.
Smith’s claim that the 2003 disciplinary action was discriminatory is without merit. The record of the disciplinary proceedings reveals that Smith was provided an opportunity to test the charges against her in a hearing presided over by an independent hearing officer. Smith makes no claim of bias on the part of Hearing Officer Bernardin. It was his recommendations that were approved by the Township. Although the penalty was later reduced on appeal, the hearing officer’s findings of guilt on two charges were affirmed.
Again, Smith fails to present evidence that individuals outside the protected class were treated more favorably. Her general assertion that “just about everyone” had falsified reports (J.A. 361) without any specifics as to the who, what, or when of such allegations and without evidence that Chief Giordano was aware of her claims, does not establish pretext.
The one specific instance of disparate impact proffered by Smith involved her allegation that Captain Goess had also changed a police report but was not subject to disciplinary action. This incident involved a report of a missing jacket in 2001. The jacket was originally reported as stolen. Goess testified that he modified the original report to add that the jacket may have been lost or misplaced and clearly noted on the report that he was responsible for making the additional notation. This incident is not sufficiently similar to the charges against Smith for pressuring a subordinate to change his police report concerning the potentially criminal behavior of Smith’s friends. It is also significant that the report in Smith’s case did not include any notation that Smith was responsible for any changes to the report. The conduct is simply not comparable. There was also no evidence that anyone knew Goess had changed a report prior to his deposition testimony on March 16, 2007. With no knowledge of the incident, the defendants had nothing to investigate, even if the acts of Captain Goess would have led to an investigation. Smith has failed to provide evidence that the defendants investigated and disciplined her based on her gender.
C. Retaliation
Next, Smith raises a claim of retaliation under CEPA.[6] To prevail on this claim, Smith must show: (1) a reasonable belief that her employer’s conduct violated a law, rule, or regulation; (2) a whistle-blowing activity; (3) an adverse employment action; and (4) a causal connection between her whistle-blowing activity and the adverse employment action. See Caver v. City of Trenton, 420 F.3d 243, 254 (3d Cir.2005) (citing Dzwonar v. McDevitt, 177 N.J. 451, 828 A.2d 893, 900 (2003)). As with discrimination claims, if Smith establishes a prima facie case, the burden shifts to the defendants to articulate a legitimate, non-discriminatory reason for its actions, Blackburn v. United Parcel Serv., Inc., 179 F.3d 81, 92 (3d Cir.1999), and then back to Smith to rebut the reasons offered by the defendants by establishing pretext, Bowles v. City of Camden, 993 F.Supp. 255, 262 (D.N.J.1998).
Smith contends she has established a prima facie case. Smith asserts that she satisfied steps one and two when she filed a discrimination complaint with the EEOC in 2000, and when she testified in the disciplinary hearing in 2003 that the *748 charges filed against her were motivated by gender bias and by Captain Goess’s desire to thwart her career advancement. Smith asserts that, as a result, the defendants retaliated against Smith for her whistle-blowing activities by: (1) permitting Captain Goess to engage in a fishing expedition that resulted in disciplinary charges being filed against her; (2) denying Smith the opportunity to attend the “Program at West Point;” (3) daily actions of degradation and humiliation; (4) pursuing her termination after two of the 2003 disciplinary charges were sustained by the hearing officer; (5) Chief Giordano’s changes to the evaluation criteria for the lieutenant promotion and his negative assessment of Smith in the “Recommendation of Chief’ section of the evaluation; and (6) the failure to promote Smith to lieutenant in 2005.
As is required in consideration of a motion for summary judgment, we view the facts in the light most favorable to the non-moving party and give Smith the benefit of any doubt the she has established the first two prongs of a prima facie case, as did the District Court. Next, we consider whether she has established the remaining two prongs: that she suffered an adverse employment action that was causally connected to her whistle-blowing activity.
This analysis requires that we review each of Smith’s asserted retaliatory acts committed by the defendants. CEPA defines a retaliatory action as “the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment.” N.J. Stat. Ann. § 34:19-2(e). The New Jersey courts have interpreted this provision to require the employer’s actions to have “either impacted on the employee’s compensation or rank or be virtually equivalent to discharge in order to give rise to the level of a retaliatory action required for a CEPA claim.” Caver, 420 F.3d at 255 (internal quotation marks omitted). An action filed for a violation of CEPA must be initiated within one year of the alleged violation. N.J. Stat. Ann. § 34:19-5.
With this criteria in mind, we must reject as time-barred any claim arising from alleged retaliatory conduct occurring prior to August 25, 2004. The District Court was correct in determining that the withdrawal of Smith’s opportunity to participate in the West Point program occurred prior to August 25, 2004, and is therefore an untimely claim of retaliation. We also concur with the determination of the District Court that the denial of the opportunity to attend a leadership program is not a retaliatory act under CEPA. While this would be a good learning opportunity for any police officer, the record does not show any connection between attendance at such a program and compensation, rank, or any other affect on Smith’s employment status. It is also illogical to conclude that Smith’s 2000 EEOC complaint caused the retaliation because Chief Giordano sponsored Smith for the program and because of the three years that had elapsed since she filed her complaint. The record established that it was only after new charges resulted in another internal investigation that the opportunity was rescinded. No reasonable fact finder could conclude that the chiefs withdrawal of his sponsorship was based on anything other than the new disciplinary action that resulted in charges that were ultimately upheld by the state court.
There was no causal connection between the 2000 EEOC complaint and the 2003 internal affairs investigation. This investigation was prompted by the complaints of two of Smith’s subordinates. It was not initiated by Chief Giordano or Captain Goess. Smith’s reference to a *749 fishing expedition is not supported by the facts. A full investigation of serious charges was conducted and resulted in the filing of eleven charges. An independent hearing officer heard the evidence and found Smith guilty of two serious charges. Smith does not challenge the motivations of the hearing officer.
CEPA “does not insulate the complaining employee from discharge or other disciplinary action for reasons unrelated to the complaint.” Higgins v. Pascack Valley Hosp., 158 N.J. 404, 730 A.2d 327, 338 (1999). It follows that a properly conducted investigation resulting in substantiated disciplinary charges that establish a valid basis for the complaint is not a retaliatory act under CEPA. See Beasley v. Passaic County, 377 N.J.Super. 585, 873 A.2d 673, 684-85 (N.J.Super.Ct.App.Div.2005); Hancock v. Borough of Oaklyn, 347 N.J.Super. 350, 790 A.2d 186, 193 (N.J.Super.Ct.App.Div.2002).
Smith has not set forth a basis on which a fact finder could conclude that the chiefs change in the evaluation criteria for promotion to lieutenant, his poor recommendation, and the 2005 failure to promote her to lieutenant were in retaliation for any whistle-blowing activity. Smith testified at the hearings conducted from July through October 2004, the exact date of her testimony is not provided. The change in promotion criteria occurred in December 2004. This temporal proximity alone is not sufficient to establish a causal connection. See Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177-78 (3d Cir.1997).
Chief Giordano testified that the changes to the promotion criteria for both sergeant and lieutenant were promulgated based on his determination that test performance was not the best indicator of ability and that greater emphasis should be placed on past work and supervisory experience. This was not the first time Chief Giordano changed promotion criteria. The evaluation criteria for lieutenant were changed in 1994, and for sergeant in 1996. Smith provides no evidence to rebut the department’s legitimate, nondiserimi-natory reasons for the changes other than the fact she did not get the promotion.
This change in criteria put greater emphasis on the chiefs recommendation than in prior evaluations. Smith contends this recommendation prevented her promotion. In Smith’s case, her disciplinary history and the pending investigation caused the chief to give her a poor recommendation. Where the disciplinary proceedings were justified, they do not serve to establish any discriminatory animus when considered by the chief in his evaluation of her fitness for promotion. Again, Smith fails to set forth a basis for finding that the chiefs recommendation was motivated by an intent to retaliate against Smith for her testimony in the disciplinary hearings.[7]
III. Conclusion
After a de novo review of the record and consideration of the arguments presented, we find that summary judgment was properly granted in favor of the defendants and we will affirm the judgment of the District Court.

. The criteria and weighting were changed as follows: written examination (12.5%); oral examination (12.5%); personnel file and profile (40%); recommendation of the chief (25%); and interview by Township Public Safety Committee (10%).

. In her brief. Smith repeatedly refers to the fact that she was found guilty of only two of thirty-five charges, but a review of the internal affairs investigation report (J.A. 229-231) and the determination of the hearing officer (J.A. 233-34), it appears that eleven charges were filed against her.

. Both charges arose from events on the evening of July 4, 2003. Seas arrested a motor vehicle operator on an outstanding warrant and notified Smith, who was required by the department’s standard operating procedures to return to headquarters and supervise Seas and ensure that the proper procedures were being followed. Meanwhile, Crothers had responded to complaints at a house where a party was being held and fireworks were being discharged. Attendees of the party at this house were friends of Smith and contacted her to complain that Crothers had confiscated the fireworks. Smith stopped at the house to speak with her friends before returning to assist Seas. When she returned to headquarters she told Crothers to omit any reference to drinking, intoxication, and abusive language from his report on the incident involving her friends.

.On appeal to the Superior Court of New Jersey, Smith's charges were upheld but her suspension was reduced to concurrent thirty-day suspensions. The Superior Court also found no merit to Smith's claim that the allegations were based on any discriminatory or retaliatory motives. (J.A. 260.)

. SOP # 85 sets forth the department’s promotion process and for the first time required that "[a]ll promotions shall be from a candidate's existing rank to the next consecutive rank. In the case of promotion to Chief, the pool of candidates shall consist of all Lieutenants and Captains. In the event that the candidates for promotion do not satisfactorily complete the promotion process, the process will be open to officers of the next subordinate rank.” (J.A. 88.) This SOP also required candidates for promotion “take examinations for the desired position,” and determined that it was in the best interests of the department to repeal its prior practice of "seniority and merit promotions.” (J.A. 89.) The length and merit of a candidate's service was only to be considered if two candidates scored equally under these promotion procedures. (J.A. 89.)

. The District Court dismissed Smith's NJLAD retaliation claims finding they are subsumed under CEPA. Smith does not challenge that determination on appeal.

. In Smith's final claim of retaliation for engaging in protected activities, she contends that the defendants subjected her to daily acts of degradation and humiliation. This claim is summarily rejected because she has failed to discuss this claim in her brief. In the absence of any specific description of acts committed by the defendants, no further discussion is required.