NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3218
_____

JAMES KERRIGAN,

Appellant

v.

OTSUKA AMERICA PHARMACEUTICAL, INC.;
MARK ALTMEYER
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 2-12-cv-04346)
District Judge: Honorable Wendy Beetlestone
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 7, 2017

Before:  CHAGARES, SCIRICA, and FISHER, *Circuit Judges*.

(Filed: September 1, 2017)
_____

OPINION[*]
_____

FISHER, *Circuit Judge*.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

James Kerrigan appeals the District Court's grant of summary judgment in favor of his former employer, Otsuka America Pharmaceutical, Inc. (OAPI), and its President and Chief Executive Officer, Mark Altmeyer, on his retaliation claim under the New Jersey Conscientious Employee Protection Act (CEPA)[1]. We will affirm.

I.

James Kerrigan was the Senior Director of Global Marketing within OAPI's patient and branding strategy group. He led the branding campaign for a drug called Samsca and was responsible for ensuring his team's compliance with applicable pharmaceutical marketing laws. To that end, the company's internal procedures mandated that Kerrigan and his team have the promotional review committee (PRC) evaluate promotional materials before publication.

In February 2011, the company's Chief Compliance Officer, found out that an article about Samsca was posted on a website without prior PRC review and that the article lacked proper disclosures. Consequently, OAPI's legal team emailed Kerrigan and the member of his team responsible for the company's relationship with the website, instructing them to remove the article.

Kerrigan reported the incident to his supervisor and recommended contacting the Federal Drug Administration (FDA) to determine whether corrective action was needed. In May 2011, after an internal investigation, the company reported the error to the FDA

[1] N.J. Stat. Ann. § 34:19-1 *et seq.*

2

without consequence. However, the member of Kerrigan's team responsible for the relationship with the website and another employee implicated in the incident resigned in lieu of termination. Unbeknownst to Kerrigan, the two reviewed the article before it was published and were not forthright during the course of the company's internal investigation.

In June 2011, Kerrigan reported a second Samsca compliance issue. Following an investigation, OAPI self-reported the error to the FDA which, in turn, required the company to send corrective communications to over 20,000 individuals. Kerrigan was not disciplined following either incident.

In 2012, Kerrigan reported that during the previous year seven investigations arose from his team, five of which resulted in the company self-reporting to the FDA. The company spent over $600,000 investigating and addressing those issues. Leaders at OAPI became concerned about the number and scope of compliance investigations, questioned Kerrigan's ability to lead his team, and agreed that a rating of "Needs Improvement" was warranted for Kerrigan's performance in 2011. In February 2012, Kerrigan was notified of his negative performance review, was denied a salary increase, and had his bonus reduced. Altmeyer explained to Kerrigan that he believed Kerrigan was placing the company at risk by not knowing what Kerrigan's team was doing or paying enough attention to catch compliance issues before they occurred.

In May 2012, the company discovered that one of its affiliates, Otsuka Pharmaceutical Europe Ltd., was using the services of a consulting firm owned by

3

Kerrigan's wife and that Kerrigan had helped his wife secure the contract. The ensuing investigation revealed that Kerrigan had violated various provisions of OPAI's code of conduct and business ethics related to disclosure of potential conflicts of interest. OAPI immediately terminated Kerrigan's employment.

Kerrigan filed this lawsuit under the CEPA, arguing that his negative performance review, reduced compensation, and termination were adverse employment actions taken in retaliation for reporting the two Samsca publishing incidents. The District Court entered summary judgment in favor of OAPI and Altmeyer, reasoning that the timing of the key events did not suggest retaliatory animus.[2] Kerrigan brought this appeal.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1332(a), and we have jurisdiction under 28 U.S.C. § 1291. "We exercise plenary review over a district court's order granting summary judgment and apply the same standard the district court applied."[3] We will affirm if, viewing the evidence in the light most favorable to the nonmoving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4]

---

[2] 2016 WL 3597609, at *4-7 (E.D. Pa. July 05, 2016).
[3] *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 256 (3d Cir. 2017).
[4] Fed. R. Civ. P. 56(a).

4

III.

We will affirm the District Court's decision because Kerrigan has not adduced evidence from which a reasonable jury could find retaliation in violation of the CEPA.

A causal connection between the adverse employment action and the protected activity is an element of a retaliation claim under the CEPA.[5] To demonstrate causation, a plaintiff must show that the "retaliatory discrimination was more likely than not a determinative factor in the decision"[6] by establishing a factual nexus between his protected activity under the CEPA and the alleged retaliatory conduct[7] through either direct or circumstantial evidence.[8] Although temporal proximity may give rise to the requisite inference of causation, where it is not "unusually suggestive," we ask whether "the proffered evidence, looked at as a whole, may suffice to raise the inference" of causation.[9]

Here, temporal proximity does not permit an inference of causation. Kerrigan reported the Samsca publishing incidents in February and June 2011. He received notice of the negative performance review and reduced compensation in February of 2012 and was terminated in May 2012. Under our precedent, this timeline—with a gap of six-months

---

[5] *Lippman v. Ethicon, Inc.*, 222 N.J. 362, 380 (2015) (quoting *Dzwonar v. McDevitt*, 177 N.J. 451, 462 (2003)).

[6] *Donofry v. Autotote Sys., Inc.*, 795 A.2d 260, 271 (N.J. Super. Ct. App. Div. 2001).

[7] *Hancock v. Borough of Oaklyn*, 790 A.2d 186, 194 (N.J. Super. Ct. App. Div. 2002).

[8] *Battaglia v. United Parcel Serv., Inc.*, 214 N.J. 518, 558-59 (2013).

[9] *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000) (internal quotation marks omitted).

to a year between the adverse employment action and the protected activity—is not unusually suggestive to infer retaliation.[10]

Without an unusually suggestive temporal proximity, we ask whether the record raises an inference of causation. It does not here. Seeking to establish retaliatory animus, Kerrigan points to his supervisor's testimony that Altmeyer started singling out Kerrigan for criticism following Kerrigan's reports. But that does not create a triable issue of fact on causation because the record is devoid of evidence from which a reasonable jury could conclude that Altmeyer's attitude towards Kerrigan changed *because* Kerrigan reported the Samsca publishing incidents. In his written declaration, Altmeyer explained that his increased criticism of Kerrigan stemmed out of concerns about Kerrigan's leadership following the numerous compliance issues related to Samsca. Kerrigan offered no evidence to rebut Altmeyer's explanation, rendering it undisputed. In sum, Kerrigan has failed to adduce evidence from which a reasonable jury could find a nexus between his alleged protected activity and the alleged retaliatory conduct.

\*　　\*　　\*

A reasonable jury could not find that retaliatory discrimination was more likely than not a determinative factor for Kerrigan's negative performance review, reduced compensation, and termination. We will therefore affirm.

---

[10] *See LeBoon v. Lancaster Jewish Cmty. Cntr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) (three-months insufficient to support an inference of causation); *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 307 (3d Cir. 2012) (seven days sufficient).