**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5286-15T2

MARLYN RAMIREZ,

     Plaintiff-Appellant,

v.

BOARD OF EDUCATION OF
THE TOWNSHIP OF ORANGE,
RONALD LEE, Superintendent
of Schools, and FAITH
ALCANTARA, Principal of
Orange High School,

     Defendants-Respondents.

_____

Submitted October 9, 2018 – Decided October 26, 2018

Before Judges Messano and Fasciale.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. L-3494-14.

Marlyn Ramirez, appellant pro se.

Methfessel & Werbel, attorneys for respondents (Steven K. Parness, of counsel and on the brief).

PER CURIAM

In this employment discrimination lawsuit, Marlyn Ramirez (plaintiff) appeals from a June 14, 2016 order granting summary judgment to the Board of Education of the Township of Orange (the Board); Ronald Lee, Superintendent of Schools (the superintendent); and Faith Alcantara, Principal of Orange High School (the principal) (collectively defendants), dismissing six counts of the complaint.[1]

The first three counts on appeal allege common law claims of retaliation "in violation of the [p]ublic [p]olicy of the State of New Jersey."  These common law causes of action are subsumed by plaintiff's statutory remedies under the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. 10:5-1 to -49.  Catalane v. Gilian Instrument Corp., 271 N.J. Super. 476, 492 (App. Div. 1994) (stating that "supplementary common law causes of action may not go to the jury when a statutory remedy under the [NJ]LAD exists").  Thus, her common law claims of employment discrimination in violation of public policy do not continue.  See Bosshard v. Hackensack Univ. Med. Ctr., 345 N.J. Super. 78, 90 (App. Div. 2001).  If a claim "does not 'seek to vindicate interests independent of those protected by the LAD[,]' it is barred."  A.D.P. v. ExxonMobil Research

---

[1]  Counts I, II, III, V, VI, and VII.

& Eng'g Co., 428 N.J. Super. 518, 545 (App. Div. 2012) (alteration in original) (quoting Bosshard, 345 N.J. Super. at 90). Plaintiff acknowledges as much in her merits brief – stating that her statutory NJLAD causes of action subsume her common law claims. As a result, we affirm summary judgment dismissing the common law causes of action in favor of defendants (Counts I to III) as a matter of law.

As to the remaining three counts dismissed by the judge – the NJLAD causes of actions – we conclude that there are no material issues of disputed facts and that defendants are entitled to summary judgment as a matter of law. We therefore affirm as to Counts V (pregnancy discrimination), VI (retaliation for requesting an accommodation), and VII (retaliation for requesting leave to care for her child with special needs).[2]

## I.

When reviewing an order granting summary judgment, we apply "the same standard governing the trial court . . . ." Oyola v. Xing Lan Liu, 431 N.J. Super. 493, 497 (App. Div. 2013). A court should grant summary judgment when the record reveals "no genuine issue as to any material fact" and "the

---

[2] Plaintiff voluntarily dismissed Counts IV, VIII, IX, and XI. At oral argument before the judge, plaintiff's counsel withdrew Count X.

moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). We owe no special deference to the motion judge's conclusions on issues of law. Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). We therefore consider the facts in a light most favorable to plaintiff. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).

Plaintiff started working for the Board as a non-tenured high school math teacher for the 2009-2010 school year. In May 2010, the Board offered her a one-year contract for the following school year, and she accepted. At the end of her second year, in June 2011, plaintiff learned she was pregnant. After the Board offered plaintiff a third one-year contract, plaintiff commenced teaching for her third school year (2011-2012), but learned her pregnancy was high-risk. She informed the principal, and was told to obtain a doctor's note.

On October 12, 2011, plaintiff faxed a letter to the Board's Human Resources Department requesting a leave of absence beginning on October 24. Although the letter did not mention plaintiff's pregnancy or that doctors deemed it high-risk, the Board still granted her request and placed plaintiff on a leave of absence. On February 7, 2012, plaintiff gave birth to her son, who suffered from medical complications requiring surgery. She requested an extended leave of absence, which the Board granted, and she returned to work on April 16, 2012.

A-5286-15T2

On May 7, 2012, she received a notice indicating the Board was not extending her a contract for what would have been the fourth school year (2012-2013). The Board did not offer plaintiff a tenured position. We have said that "local boards of education have an almost complete right to terminate the services of a teacher who has no tenure and is regarded as undesirable by the local board." Dore v. Bedminster Twp. Bd. of Educ., 185 N.J. Super. 447, 456 (App. Div. 1982). See also N.J.S.A. 18A:28-5(a) (establishing the requirements for tenure).[3]

## II.

We begin by addressing plaintiff's claim that defendants discriminated against her based on her pregnancy. To prove a prima facie case of discrimination, the plaintiff must demonstrate that she "(1) belongs to a protected class; (2) applied for or held a position for which he or she was objectively qualified; (3) was not hired or was terminated from that position; and (4) the employer sought to, or did fill the position with a similarly-qualified person." Gerety v. Atl. City Hilton Casino Resort, 184 N.J. 391, 399 (2005). We adopted the federal standard that the Supreme Court of the United States

---

[3] We note that N.J.S.A. 18A:28-5(a) applies here as plaintiff was initially hired in 2009, prior to the 2012 effective date of N.J.S.A. 18A:28-5(b).

proclaimed in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). After the plaintiff produces such evidence, the burden shifts to the defendant to "rebut the presumption of undue discrimination by articulating some legitimate, nondiscriminatory reason for the employee's rejection." Andersen v. Exxon Co., 89 N.J. 483, 493 (1982).  The plaintiff can then "respond by showing the employer's proffered reason was merely pretext for the discrimination." Gerety, 184 N.J. at 399.

The Third Circuit has set forth the appropriate analysis as follows:

> [A] plaintiff who has made out a prima facie case may defeat a motion for summary judgment by either (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.
>
> . . . [T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably  to infer that each of the employer's proffered non-discriminatory reasons . . . was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext).
>
> To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.

6

Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder <u>could</u> rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons.

[<u>Fuentes v. Perskie</u>, 32 F.3d 759, 764-65 (3d Cir. 1994) (last alteration in original) (citations and quotations omitted).]

"We have adopted and consistently applied this standard." <u>DeWees v. RCN Corp.</u>, 380 N.J. Super. 511, 528 (App. Div. 2005).

Here, the Board did not fire plaintiff. Instead, and well after her pregnancy, the Board elected – within its discretion – not to offer plaintiff a tenured position. Plaintiff was not automatically entitled to a tenured teaching position, but more importantly, the Board concluded that she performed substandard teaching work.

Plaintiff argues that her performance reviews demonstrate that the Board's reason for not offering her a tenured position – that she was a poor teacher – is pretextual. She maintains that her reviews show that she was not as "poor" and ineffective as defendant claims. But her performance evaluations alone – which reflect a mixture of different ratings – do not automatically entitle plaintiff to a tenured position.

An administrator who observed during one of many performance evaluations told plaintiff to "supplement" her teaching approach with more "sufficient" techniques. The Board provided her with articles on writing learning objectives because the administration felt that her current learning objectives were insufficient. The Board notified plaintiff that she failed to provide her students with "standards" of what they were expected to know, and she did not establish the measurements to which they would be held. She was also critiqued for only having students complete two or three problems in an entire class period, thus not "maximizing the instructional time." She was told that there was a "disconnect" between her lesson plans and her class instruction.

The Board also told plaintiff on numerous occasions that the "physical environment of the classroom" was inadequate. One such observation said that plaintiff's inability to remedy the problem was "unacceptable" and that "failure to address this area from this point forth will garner an 'unsatisfactory' rating." The administration offered plaintiff "assistance" in addressing this concern, but the record does not show if she took advantage of this opportunity.

For example, the Board instituted a professional improvement plan (PIP) that was intended to assist plaintiff in "effective use of cooperative learning/effective grouping strategies" to address her "needs improvement"

scores. This required plaintiff to have weekly meetings with a school administrator, obtain coach support from a consultant, complete an online workshop, read an article on "Flexible Grouping" and conduct independent research on strategies in that area, and observe colleagues' classes. An administrator in the superintendent's office testified that a PIP is not seen "very often" in a teacher's personnel file.

Administrators met with plaintiff regarding her absenteeism, in particular because plaintiff's "absences specifically days before or after a weekend or recess period." Plaintiff received letters from the superintendent's office stating that on two occasions in May 2010, plaintiff was absent and failed to inform the substitute service. She also overused her allotted amount of sick days for the year.

As a result of her "employment performance," plaintiff's salary increment for the 2010-11 school year was withheld. She was also sent a letter by the then-principal stating that plaintiff failed to adhere to a school-wide notice to remove instructional aids from classroom walls due to a standardized testing requirement. The letter explained that if state monitors had visited, the school would have been "cited for this violation of a state testing requirement."

9

Plaintiff also failed to provide defendants with "emergency substitute plans" and failed to properly input student grades on a number of occasions.

Many of plaintiff's problems occurred prior to her pregnancy, and before she ever requested a maternity leave or extension. A disagreement about performance is not proof of invidious discrimination. See Fuentes, 32 F.3d at 767 ("the fact that the relevant decision[-]makers disagree about the plaintiff's qualifications does not evidence discrimination").

> [I]f the employer proffers a non-discriminatory reason, plaintiff does not qualify for a jury trial unless . . . she can "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."
>
> [Zive v. Stanley Roberts, Inc., 182 N.J. 436, 455-56 (2005) (quoting Fuentes, 32 F.3d at 764).]

Here, plaintiff failed in both respects. She failed to demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the Board's "articulated legitimate reasons" for its action. Fuentes, 32 F.3d at 764-65. She also failed to "adduc[e] evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of

the adverse employment action." Id. at 764. Thus, plaintiff was unable to show that the Board's reasons were pretextual.

As to plaintiff's retaliation claim, our Supreme Court has stated that "[w]hen the claim arises from alleged retaliation, the elements of the cause of action are that the employee engaged in a protected activity known to the [employer,] the employee was subjected to an adverse employment decision[,] and there is a causal link between the protected activity and the adverse employment action." Battaglia v. United Parcel Serv., Inc., 214 N.J. 518, 547 (2013) (alterations in original) (citation and internal quotation marks omitted). In a retaliation claim, the burden also shifts to the defendant to counter the alleged retaliatory action with a non-retaliatory reason. Id. at 546. Defendants also properly point out that this court has stated that, "[t]emporal proximity, standing alone, is insufficient to establish causation." Hancock v. Borough of Oaklyn, 347 N.J. Super. 350, 361 (App. Div. 2002).

The record shows that between 2001 and 2015, seventy-eight teachers in the district went on maternity leave. Seven of those seventy-eight teachers left the district before they were up for tenure. Of the remaining seventy-one, sixty-seven teachers were granted tenure, or ninety-four percent. The Board hired seven staff members at or around the same time as plaintiff, and they became

11

pregnant at some point during the first three years of their employment – like plaintiff – and were renewed and granted tenure at the close of the 2011-2012 school year.

"Thus, although it prohibits discriminatory employment practices, [NJ]LAD acknowledges the right of employers to manage their businesses as they see fit." Viscik v. Fowler Equip. Co., 173 N.J. 1, 13 (2002). Defendants accurately claim that this grants a school board the discretion to hire and fire teachers – specifically non-tenured teachers – as it sees fit to create an optimal learning environment for students.

Moreover, summary judgment was properly granted because plaintiff failed to present sufficient evidence that discredited the Board's non-discriminatory reasons for not offering her another contract. She did not provide evidence to "allow a factfinder reasonably to infer that each" of the reasons the Board provided were "either a post hoc fabrication or otherwise did not actually motivate the employment action . . . ." Fuentes, 32 F.3d at 764. "To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Id. at 765.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

13