873 A.2d 577 (2005)
377 N.J. Super. 428
Jeffrey NARDELLO, Plaintiff-Appellant,
v.
TOWNSHIP OF VOORHEES, Keith Hummel, Louis Bordi, John Prettyman, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued March 16, 2005.
Decided April 4, 2005.
*578 Clifford L. Van Syoc, Cherry Hill, argued the cause for appellant (Van Syoc Chartered, attorneys; Mr. Van Syoc and James E. Burden, on the brief).
Patricia A. Smith, Voorhees, argued the cause for respondent (Ballard Spahr Andrews & Ingersoll, attorneys; Ms. Smith and Edward T. Groh, on the brief).
Before Judges BRAITHWAITE, LISA and WINKELSTEIN.
The opinion of the court was delivered by
WINKELSTEIN, J.A.D.
Plaintiff, Jeffrey Nardello, appeals from the Law Division's summary judgment dismissing his complaint under New Jersey's Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -8. We reverse.[1]
Plaintiff was employed as a police officer by the Voorhees Township Police Department from September 1980 until September 2002. Defendant Keith Hummel is the Township's Chief of Police; defendant John Prettyman is the Deputy Chief; and defendant Louis Bordi is a lieutenant.
During his employment, plaintiff received excellent work performance evaluations, normal pay raises, and was never demoted; he was promoted to lieutenant in 1999. As a lieutenant, he was the commanding officer of the detective bureau and in charge of the department SWAT team. In his brief, plaintiff lists thirty pages of incidents he claims collectively constitute adverse employment actions his employer took against him. We will not repeat each claim, but will review several of them to place plaintiff's arguments in context.
*579 In 1999, plaintiff was required to perform an internal investigation regarding the alleged misconduct of an officer. Prettyman told plaintiff that Hummel was "gunning" for the officer, indicating that he wanted plaintiff to work hard to find incriminating evidence against the officer. Plaintiff informed Hummel that he would comply with the law and perform a fair investigation. Thereafter, plaintiff claims his work environment became hostile and retaliatory. He was denied permission to obtain firearms instructor training relative to his membership on the SWAT team. He claims that because of Hummel's animosity, and "in order not to have it adversely impact on plaintiff's friends and colleagues in the SWAT team, plaintiff was coerced into resigning on September 1, 2000, both as a leader and as a member of the SWAT team...."
Also in September 2000, Prettyman ordered plaintiff to conduct an investigation into an adult sex party attended by a Township police officer. Based on plaintiff's "fact-finding," the officer was written up and told not to attend those types of parties because "officers have to abide by a higher moral standard." Plaintiff did not agree with the officer's punishment, believing it to be a violation of the officer's civil rights. Consequently, plaintiff reported the alleged violation to the prosecutor's office. That office later informed plaintiff that the officer's rights were violated and the disciplinary letter should be removed from his file. After plaintiff told Prettyman that he contacted the prosecutor's office and its response, some of plaintiff's job responsibilities were transferred to another officer.
Plaintiff filed a written complaint in October 2000 regarding his concern that department personnel procedures were being routinely violated. Hummel demanded to know who plaintiff intended to call as witnesses for the complaint, but when plaintiff refused to tell him because of an alleged concern about retaliation, Hummel threatened to charge plaintiff with insubordination. Hummel also stated that plaintiff was mentally unstable and should see a psychiatrist.
The following January, plaintiff believed a Township police officer had unreasonably "sicced" a K-9 dog on a suspect and the department was covering it up by submitting black-and-white photographs of the injuries instead of color photographs, in violation of the department manual, which provided that color photographs should always be issued for police dog bite incidents. He asked the Camden County Prosecutor's Office to conduct an internal investigation into the incident. As a result of taking that action, plaintiff claims he was "wrongfully removed from the detective bureau, an act of retaliation, and ultimately had all of his authority and responsibility taken away, such that plaintiff, even though a lieutenant, supervised no one."
On September 7, 2000, plaintiff met with the Township Mayor regarding the "goings on" at the police department. He told the Mayor about the retaliatory environment and its impact on his work. The Mayor told him to "play the game."
Plaintiff also claims he was given demeaning jobs for his rank: removing and installing an alarm in the stairwell; performing maintenance of toilets; performing background investigations; and overseeing a building project. He was not permitted to work on assignments customarily under a lieutenant's job title.
Plaintiff instituted this lawsuit on September 4, 2001. He retired on September 1, 2002. His retirement was precipitated by a hand injury that prevented him from qualifying to carry a weapon. Plaintiff also claims his retirement was a result of psychological problems he suffered due to his hostile work environment.
*580 CEPA prohibits an employer from retaliating against an employee under certain circumstances. N.J.S.A. 34:19-3. To establish a CEPA violation, a plaintiff must prove that: (1) "he or she reasonably believed illegal conduct was occurring"; (2) "he or she disclosed or threatened to disclose the activity to a supervisor or public body"; (3) "retaliatory employment action was taken against him or her"; and (4) "a causal connection [exists] between the whistle-blowing and the adverse employment action." Hancock v. Borough of Oaklyn, 347 N.J.Super. 350, 358-59, 790 A.2d 186 (App.Div.2002), appeal dismissed, 177 N.J. 217, 827 A.2d 286 (2003).
Defendants do not dispute that the activities for which plaintiff claims he was retaliated against may be considered whistle-blowing activities as defined in N.J.S.A. 34:19-3. The primary issue presented to the motion judge, and on appeal, is whether plaintiff can show that retaliatory action was taken against him. In granting summary judgment, the motion judge found "[t]here was no discharge, suspension, demotion or other adverse employment action taken against [plaintiff]." Plaintiff claims that although he was not terminated, suspended or demoted, defendants took adverse employment action against him. At the very least, he asserts that disputed facts exist to defeat summary judgment. We agree.
To decide a summary judgment motion, the judge must determine whether "the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523, 666 A.2d 146 (1995); see also R. 4:46-2(c). The trial court must not decide issues of fact; it must only decide whether there are any such issues. Brill, supra, 142 N.J. at 540, 666 A.2d 146. On appeal, we use these same standards. We first determine whether there exists a genuine issue of fact, and if there does not, we decide whether the trial court's ruling on the law was correct. Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App.Div.1998). Here, the evidence presented, when viewed in a light most favorable to plaintiff, shows genuine issues of material fact as to whether he suffered retaliatory action by his employer.
N.J.S.A. 34:19-2e defines "Retaliatory action" as "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." As such, "employer actions that fall short of [discharge, suspension or demotion], may nonetheless be the equivalent of an adverse action." Cokus v. Bristol Myers Squibb Co., 362 N.J.Super. 366, 378, 827 A.2d 1173 (Law Div.2002), aff'd, 362 N.J.Super. 245, 827 A.2d 1098 (App.Div.), certif. denied, 178 N.J. 32, 834 A.2d 405 (2003); see also Anderson v. Davila, 125 F.3d 148, 163 (3rd Cir.1997) (while alleged retaliatory conduct did not involve tangible adverse employment decision against the plaintiff, actions denied the plaintiff the "benefit of initiating litigation without the harassment of otherwise uncalled for surveillance, simply because [the plaintiff] filed a potentially vexatious lawsuit"); Charlton v. Paramus Bd. of Educ., 25 F.3d 194, 200 (3rd Cir.) (former employee may file retaliation action against prior employer under Title VII for retaliatory conduct), cert. denied, 513 U.S. 1022, 115 S.Ct. 590, 130 L.Ed.2d 503 (1994); Mancini v. Tp. of Teaneck, 349 N.J.Super. 527, 564-65, 794 A.2d 185 (App.Div.2002) (assignment to different or less desirable tasks may constitute adverse employment action and establish prima facie case of retaliation), aff'd as modified, 179 N.J. 425, 846 A.2d 596 (2004).
*581 On the other hand, not every employment action that makes an employee unhappy constitutes "`an actionable adverse action.'" Cokus, supra, 362 N.J.Super. at 378, 827 A.2d 1173 (quoting Montandon v. Farmland Indus., Inc., 116 F.3d 355, 359 (8th Cir.1997)); see also Hancock, supra, 347 N.J.Super. at 360, 790 A.2d 186 (allegations of retaliatory conduct that made plaintiff's job "mildly unpleasant" and did not result in substantial impact on either plaintiff's working conditions or cause a de facto termination were insufficient to constitute unlawful retaliation).
Recently, the New Jersey Supreme Court discussed the policy underpinnings relating to claims of retaliation in a CEPA action. Green v. Jersey City Bd. of Educ., 177 N.J. 434, 828 A.2d 883 (2003). Green was decided on other issues, that being whether punitive damages may be awarded against a public entity under CEPA and whether the claim in that case was barred by CEPA's one-year statute of limitations. Nonetheless, in discussing what constitutes an adverse employment action taken against an employee in the terms and conditions of the employee's employment pursuant to N.J.S.A. 34:19-2e, the Court noted that "many separate but relatively minor instances of behavior directed against an employee that may not be actionable individually but that combine to make up a pattern of retaliatory conduct" may constitute an adverse employment action pursuant to the governing statute. Id. at 448, 828 A.2d 883. Quoting Abbamont v. Piscataway Township Board of Education, 138 N.J. 405, 431-32, 650 A.2d 958 (1994), the Green Court emphasized that the purpose of New Jersey's CEPA statute "`is to protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct. Consistent with that purpose, CEPA must be considered "remedial" legislation and therefore should be construed liberally to effectuate its important social goal.'" 177 N.J. at 448, 828 A.2d 883.
Although the trial court correctly stated that the cited language was dicta because the primary issue addressed by the Green Court was a statute of limitations question, "as an intermediate appellate court, [we are] bound by carefully considered dictum from the Supreme Court." State v. Breitweiser, 373 N.J.Super. 271, 282-83, 861 A.2d 176 (App.Div.2004), certif. denied, 182 N.J. 628, 868 A.2d 1031 (2005).
Here, while plaintiff was not discharged, suspended or demoted, when the facts are viewed in a light most favorable to him, a jury could draw an inference that he suffered a series of adverse retaliatory actions by his employer. In 1999, plaintiff obtained the third highest rank in the department  a lieutenant. As a lieutenant, he was in charge of the SWAT team. Plaintiff set forth several instances beginning in 1999 where he was forced to inform superiors of cover-ups and alleged misconduct. Because of this, plaintiff claims he was: denied permission to obtain firearms instructor training relative to his membership on the SWAT team; coerced to resign as leader and a member of the SWAT team; denied the ability to work on crime prevention programs; and removed from the detective bureau, with his authority to supervise taken away. He also claims he was given demeaning jobs for his rank. While defendant contests that these actions were taken in retaliation for plaintiff's conduct, and claims that plaintiff was unable to fully explain at his deposition exactly what retaliatory conduct was taken against him, we are satisfied that while many of the incidents are relatively minor, plaintiff has made a prima facie case and a jury could conclude that they combine to *582 demonstrate a pattern of retaliatory conduct that is specifically prohibited.
We are mindful that plaintiff suffered no reduction in pay during the course of his employment. He claims among other things, however, that he suffered emotional distress as a result of his employer's actions. As our New Jersey Supreme Court recently noted in a case brought under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -42, "the Legislature intended victims of discrimination to obtain redress from mental anguish, embarrassment, and the like, without limitation to severe emotional or physical ailments." Tarr v. Ciasulli, 181 N.J. 70, 81, 853 A.2d 921 (2004). We are satisfied that this same analysis may be applied in a CEPA action.
Reversed and remanded for further proceedings.
NOTES
[1] In arriving at our decision, we have not considered any portion of plaintiff's appendix that was stricken by our order of August 24, 2004.