**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4230-16T2

TAMMY A. RUSSELL,

     Plaintiff-Appellant,

v.

RUTGERS, THE STATE
UNIVERSITY and JULIE L.
AMON, Associate Chancellor,

     Defendants-Respondents,

and

WENDELL E. PRITCHETT,
Chancellor,

     Defendant.

_____

        Argued September 20, 2018 – Decided November 29, 2018

        Before Judges Alvarez and Reisner.

        On appeal from Superior Court of New Jersey, Law Division, Camden County, Docket No. L-2607-15.

        Nancy M. Mahony argued the cause for appellant.

Ellis I. Medoway argued the cause for respondents (Archer & Greiner, PC, attorneys; Ellis I. Medoway and Tracy Asper Wolak, on the brief).

PER CURIAM

Plaintiff Tammy A. Russell appeals the April 28, 2017 grant of summary judgment to defendants Rutgers University and Julie L. Amon.[1] Russell sued the named defendants, alleging violations of the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14. For the reasons that follow, we affirm.

Amon, the Associate Chancellor, hired Russell in May 2012 to serve as the Director of the Rutgers Camden Educational Opportunity Fund (EOF) Program. She supervised Russell's job performance.

The EOF was established to support access to higher education for economically or educationally disadvantaged students. The New Jersey Commission on Higher Education has adopted regulations regarding the administration of the program, through which the State provides funding for campus programs and student grants. This includes funding not only for scholarships, but for academic year and summer institute programming.

---

[1] Summary judgment was also granted to the third defendant, Wendell E. Pritchett, however, that dismissal is not being appealed.

A-4230-16T2

Among the EOF Director's responsibilities is oversight of the program budget, which must be submitted each year to the State. Separate budgets for the academic and the summer terms are required, and the Rutgers EOF office in New Brunswick submits one report to the State on behalf of both campuses. The Director is also required to work with state representatives, supervise staff, oversee the delivery of student services, and plan the summer institute.

Upon assuming her job duties, Russell discovered EOF funds may have been used to pay salaries for non-EOF Rutgers staff. After she raised the issue, the problem was remedied. Russell alleges that challenging this practice early on, changed the way she was perceived in the workplace.

Russell claimed Amon took budgeting responsibilities away from her once she expressed concern over budgeting practices. She also claimed Amon told her that she would not have access to the budget, was no longer responsible for completing state mandated EOF reports, and her responsibilities were otherwise drastically reduced after she challenged Amon about EOF expenses being out of compliance with State regulations.

Russell acknowledged, however, that she was still responsible for reviewing expenditures and approving items in the budget even though she did not physically complete it. She was required to sign off on the budget before it

3

went to New Brunswick. Russell said that State EOF employees complained to her about the EOF reports being untimely and completed incorrectly.

Russell also said in deposition that she "perceived" that Amon intended to make the job more difficult if she did not approve the budget. But she admitted that Amon never forced her to approve it or threatened her about it in any fashion. She and Amon disagreed on Russell's interpretation of EOF regulations, and when there was a dispute, Amon would send Russell to other members of the staff for assistance or perform the task herself. At deposition, Russell testified she was told by a State EOF employee that Amon blamed her for EOF report issues.

On November 6, 2012, Russell sent an email to the Rutgers Camden Vice Chancellor for Finance and Administration, Larry Gaines, raising concerns regarding the budget and budgeting process, and highlighting problem areas the State had identified with the EOF reports. In the email, she also indicated she did not currently have access to some of the information noted in specific budget items, and that the staff that had assumed her EOF duties had never performed the work before, and thus had limited ability to correctly complete the reports. Gaines emailed Amon and the relevant staff asking for an in-person meeting.

4

Amon responded that no meeting was necessary, and that she would meet with Russell personally to discuss the issue.

On November 27, 2013, Russell wrote to Pritchett as follows:

> I apologize for contacting you directly but find it very important that I meet with you at your earliest convenience to discuss my concerns with [Amon], including the continued financial misdirection she provides which is negatively affecting EOF and this University. Understand the New Brunswick compliance office and others in New Brunswick are now involved and prior to me moving forward with an official grievance procedure I wanted you to be well aware of all details in order for you to provide insight and have the opportunity to be informed and part of this process. . . . Please let me know how you wish for me to schedule an appointment with you or how you wish for me to proceed.

Pritchett thanked Russell for the communication, but directed her to others to address the issues.

As a result of Russell's allegations, Rutgers performed an internal investigation of Rutgers Camden's EOF program. The report concluded that although there was no need for further investigation, a full review of the program should be made in a subsequent fiscal year, noting that EOF was currently on the internal audit department's annual plan for fiscal year 2016. The main concerns identified during this internal audit included the allocation of administrative assistant salary and failure to timely sign off on the budget, which

had been resolved. Governance and fund sources were identified as requiring a full review of the EOF program for all of Rutgers, not just the Camden campus, on its fiscal year 2016 annual audit plan.

Russell's first performance review, made in April 2013, indicated she met performance standards overall but did not meet expectations when evaluated with regard to her collaboration skills. Under this category, Amon noted that Russell had difficulty communicating with other staff, who had complained her tone was "abrasive, harsh, and combative." Throughout 2013, Amon expressed concerns to Russell in writing regarding her timeliness, communications problems, and failure to follow instructions regarding the completion of certain tasks.

From January 2013 to July 2013, Russell's colleagues also expressed concerns about her performance in writing to Amon. On August 1, 2013, Amon forwarded a memo to Russell outlining problems with Russell's job performance, including Russell's "poor communication and program management." She commented that the issues had resulted in "serious damage to both your credibility and that of your office."

Nonetheless, in April 2014, Russell's performance was rated again as meeting standards overall. However, Amon continued to inform Russell, from

6

June to July 2014, about problems with her job performance, including the submission of work containing errors, decision-making beyond Russell's scope of authority, timeliness, significantly poor event planning, and failure to convey important information to Amon.

Between April 2014 and July 2014, Amon received additional complaints from Russell's colleagues along the same line as earlier problems: poor event planning, untimeliness, and tone. On July 24, 2014, Amon forwarded a pre-termination letter and scheduled a conference for the following day. The next day, Amon terminated Russell, referring back to the August 1, 2013 memo.

On July 24, 2014, Russell advised the Associate Vice President of Rutgers Labor Relations Department that she was "fully prepared to have legal counsel represent me and am very prepared to go outside of Rutgers University regarding this case." The email was forwarded to the Director of the Office of Employment Equity, who assigned it to staff for investigation. Russell was then suspended with pay, pending the outcome of the investigation. Rutgers Office of Employment Equity issued an August 18, 2014 report concluding that no violation of Rutgers employee policies had occurred, as there did not appear to be a "causal nexus between [Russell's] complaint in November 2013 and the issuance by [Amon] of the July 24, 2014 letter scheduling a conference with her

7

to discuss the termination of her employment, and/or the issuance of the draft letter of termination on July 25, 2014." The final termination letter was similar to the earlier version, specifying in some detail errors and inaccuracies in budget submissions and serious problems with the summer institute planning program.

Turning to the genesis of this appeal, the Law Division judge decided the summary judgment motion from the bench. After disposing of the claim against Pritchett, who had left the university weeks before Russell's termination, the judge said it was clear based on his review of the submissions that Russell "was having issues on the job." Despite the fact she was informed about the problems, she did not change course. He opined that the legions of complaints against her, as well as her difficulties in planning the most important events for which she was responsible as the EOF Director, were what resulted in her termination. He concluded that the reasons defendants proffered for the termination were "real" and "existed both before and after the November 2013 purported whistleblowing email was sent[.]"

On appeal, Russell raises the following points:

> POINT I
> THE TRIAL COURT'S GRANT OF SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS SHOULD BE REVERSED BECAUSE IT DOES NOT COMPORT WITH R. 4:46-2.

A. The Trial Court Erred When It Rejected Plaintiff's Evidence Which Demonstrates That Plaintiff's Whistleblowing And Defendant Amon's Retaliation Began Soon After Plaintiff's Hire in May 2012.

    1. The Record Is Replete With Evidence Of Plaintiff's Whistleblowing in 2012.

    2. The Trial Court Erred When It Concluded That Plaintiff's Sole Negative Job Action Was Her August 2014 Termination.

B. Defendant Amon's Animosity Towards Plaintiff is Unmistakeable; Moreover, It Creates Factual Issues That Can Only Be Resolved By A Trial.

We review grants of summary judgment employing the same standard as the motion judge. Bhagat v. Bhagat, 217 N.J. 22, 38 (2014). Therefore, we "review the competent evidential materials submitted by the parties to identify whether there are genuine issues of material fact and, if not, whether the moving party is entitled to summary judgment as a matter of law." Ibid.; Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); R. 4:46-2(c). In order to prevail under a CEPA claim, a plaintiff must demonstrate:

(1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy;

(2) he or she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3(c);

9

(3) an adverse employment action was taken against him or her; and

(4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

[Lippman v. Ethicon, Inc., 222 N.J. 362, 380 (2015) (quoting Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003)).]

Where a plaintiff establishes these elements, a defendant "must come forward and advance a legitimate nondiscriminatory reason for the adverse conduct against the employee." Klein v. Univ. of Med. & Dentistry of N.J., 377 N.J. Super. 28, 38 (App. Div. 2005) (citation omitted). A plaintiff must then raise genuine issues of material fact establishing that the employer's proffered explanation is pretextual. Id. at 39.

Russell contends that the trial court overlooked or ignored incidents before the November 2013 email she sent Pritchett, incidents which Russell claims were protected under CEPA. The record does not support the argument, however, that even if her complaints were protected by CEPA, any retaliatory action was taken against her.

Certainly, stripping an employee of job responsibilities has long been recognized in New Jersey as retaliatory action. See Mancini v. Twp. of Teaneck, 349 N.J. Super. 527, 564 (App. Div. 2002).

The trial court rejected Russell's allegation that, for retaliatory reasons, she had been stripped of job responsibilities. We see no error in that finding. Although Russell testified in deposition that the dispute regarding the use of EOF funds to pay non-EOF salaries arose shortly after her appointment, the problem was remedied and the salaries properly removed from the EOF budget. After that conflict, Russell continued to be actively involved with the budget, and with state mandated EOF reports. She was required to review expenditures and approve certain processes, even if she no longer prepared the EOF budget report. She signed off on it before it was forwarded to New Brunswick for approval. Russell said she "perceived" that if she did not approve a budget, Amon would make her job much more difficult, but she was unable to identify anything that Amon did or said to that effect. The absence of specifics, even viewing the allegations in a light most favorable to plaintiff, does not support the claim of retaliatory diminution of the job responsibilities.

In support of her position, Russell relies on Nardello v. Twp. of Voorhees, 377 N.J. Super. 428 (App. Div. 2005). There, however, the employee, a police officer, identified concrete action by his employer that appeared retaliatory: the denial of permission to obtain firearms instructor training, coercion to resign as a leader and a member of a S.W.A.T. team, the denial of the ability to work on

11

crime prevention programs, removal from the detective bureau, removal of the authority to supervise others, and the assignment to demeaning tasks for someone of his rank. Id. at 435-36. Those steps constituted a prima facie case, which a jury could conclude demonstrated a pattern of retaliatory conduct. Id. at 436. Although there was a shift in responsibility, ultimately Russell still had final approval and decision-making authority over the EOF budget. At no time was she explicitly told, or had objective cause to believe, that she was being punished or retaliated.

Not every action that makes an employee unhappy constitutes an actionable retaliatory action under CEPA. Id. at 434. That Russell's duties shifted, although she bore the same responsibility as the ultimate signatory on the budget submission, may have been the product of the ongoing shortcomings her employer conveyed to her, including problems with communication, an inability to work well with colleagues, complete tasks in a timely basis, and submit materials without error.

Defendants also argue that even if Russell has made a prima facie case, they have presented a legitimate, non-retaliatory reason for Russell's termination: her poor work performance. An employer's burden of proof in demonstrating a legitimate, non-retaliatory reason for the termination "has been

described as so light as to be 'little more than a mechanical formality; a defendant, unless silent, will almost always prevail.'" Mogull v. CB Commer. Real Estate Grp., 162 N.J. 449, 469 (2000) (quoting Developments in the Law - - Employment Discrimination: Shifting Burdens of Proof in Employment Discrimination Litigation, 109 Harv. L. Rev. 1579, 1590 (1996)). Amon's concerns over Russell's performance, particularly her communication skills, were extensively and consistently documented throughout Russell's time at Rutgers and were often echoed by Russell's colleagues. Therefore, defendants have met their burden.

After the employer has met its burden, "the plaintiff has an opportunity to establish that the proffered reason was pretextual, thereby enabling the employee to 'prove an employer's [unlawful] intent through circumstantial evidence.'" DePalma v. Bldg. Inspection Underwriters, 350 N.J. Super. 195, 214 (App. Div. 2002) (quoting Bergen Commer. Bank v. Sisler, 157 N.J. 188, 209 (1999)) (alteration in original). "If a plaintiff who has established a prima facie case can raise enough suspicions that the employer's proffered reasons for termination were pretextual, the motion for summary judgment should thus be denied." Greenberg v. Camden Cty. Vocational and Tech. Schs., 310 N.J. Super. 189, 200 (App. Div. 1998).

13

An example of circumstantial evidence of pretext includes an indication in a termination letter that the plaintiff's testimony against the employer in a lawsuit brought by a former employee caused substantial economic damages to the employer. See Romano v. Brown & Williamson Tobacco Corp., 284 N.J. Super. 543, 552 (App. Div. 1995). Another is the retention of employees who participated in illegal activity but who did not report the employer's violations, unlike the plaintiff. See Donofry v. Autotote Sys., Inc., 350 N.J. Super. 276, 293 (App. Div. 2001).

Russell's characterization of the reduction of her duties as circumstantial evidence of a retaliatory intent simply fails. Amon's communications expressing concern with her performance were more than, as Russell would have it, just a paper trail justifying her termination. Defendants' proffered reasons for terminating Russell were supported by the record—such as her performance reviews and emails from Amon and others. The documentation defendants produced supporting Russell's termination were not inherently flawed, and established that the termination was not pretexted. Thus, we are satisfied there are no genuine issues of material fact, and that defendants are entitled to judgment as a matter of law. See R. 4:46-2(c); Brill, 142 N.J. at 540.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14

A-4230-16T2