**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3807-23

WILLIAM NIELSEN,

     Plaintiff-Appellant,

v.

COUNTY OF CAPE MAY
and LIEUTENANT STEPHEN
PRINCE,

     Defendants-Respondents.

_____

        Argued May 20, 2026 – Decided June 25, 2026

        Before Judges Gummer, Vanek and Jacobs.

        On appeal from the Superior Court of New Jersey, Law Division, Cape May County, Docket No. L-0320-19.

        Sebastian B. Ionno argued the cause for appellant (Ionno & Higbee Attorneys at Law LLC, attorneys; Sebastian B. Ionno, on the briefs).

        Jennifer B. Barr argued the cause for respondents (Cooper Levenson PA, attorneys; Jennifer B. Barr, Russell L. Lichtenstein and Katlin L. Trout, on the brief).

PER CURIAM

Plaintiff William Nielsen appeals from a June 25, 2024 Law Division order granting summary judgment in favor of defendants, Cape May County (the County) and Lieutenant Stephen Prince, and dismissing plaintiff's complaint for violations of the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14, and the New Jersey Civil Rights Act (NJCRA), N.J.S.A. 10:6-2.[1]

In a comprehensive fifty-six-page written decision, the trial court concluded plaintiff had failed to establish a prima facie claim under CEPA and, alternatively, the complaint was time-barred as filed outside the one-year statute of limitations for CEPA claims. We affirm based on plaintiff's failure to demonstrate a prima facie case under CEPA, substantially for the reasons set forth in the trial court's decision.

I.

We recount the material facts from the summary judgment record, viewing the evidence in a light most favorable to plaintiff, the non-moving party, and

---

[1] Plaintiff stated in his merits brief and at oral argument he is not challenging on appeal the court's finding that his June 2018 harassment report was not CEPA-protected conduct, dismissal of his NJCRA/constitutional claims, and the dismissal of all claims against Prince.

A-3807-23

drawing all reasonable inferences in his favor. See Crisitello v. St. Theresa Sch., 255 N.J. 200, 218 (2023).

Plaintiff began working at the Cape May County Jail in 2004 as a Corrections Officer. Between 2008 and 2013, plaintiff was the subject of eleven Internal Affairs investigations. Although discipline resulted from some of those investigations, plaintiff did not challenge the findings.

In 2015, plaintiff was promoted to Sergeant with the approval of Warden Donald Lombardo. As a Sergeant, plaintiff supervised subordinate corrections officers and was responsible for, among other duties, preparing annual performance evaluations for officers assigned to his squad. On March 28, 2017, plaintiff completed an annual evaluation of Officer Richard Baker. In the evaluation, plaintiff wrote that Baker generally maintained a positive attitude and wanted to perform well but appeared timid and insufficiently proactive. Plaintiff further stated other officers had informed him Baker appeared to "skate" away from assigned posts too frequently. Plaintiff had spoken to Baker about the issue and believed the problem had been corrected. Baker signed the evaluation, and plaintiff submitted it to Lieutenant Robert Campbell.

A little over a month later, plaintiff was interviewed by Human Resources Director Jeffrey Lindsay regarding complaints that members of plaintiff's squad

had harassed or bullied Baker. Plaintiff believed the questioning suggested the administration suspected either he was harassing Baker or he had failed to prevent others from doing so. Plaintiff acknowledged Lindsay had a legitimate basis to investigate complaints of workplace harassment.

In June 2017, Lieutenant Campbell reviewed Baker's evaluation and concluded the comments concerning his alleged "skating" appeared to be based on reports from other officers rather than on plaintiff's personal observations. Campbell also noted the absence of any supporting documentation regarding either the alleged conduct or plaintiff's counseling of Baker. After consulting Captain Charles Magill, Campbell returned the evaluation to plaintiff with a written note asking whether he personally had observed Baker "skating" and whether he had documented his conversation with Baker. The note requested plaintiff to "adjust accordingly."

Plaintiff believed the request was retaliatory and reflected management's preference for Baker. Lieutenant Campbell, Captain Magill, and Warden Lombardo each testified, however, that the concern involved plaintiff's reliance on information supplied by others rather than his own observations and the absence of supporting documentation.

4

A few weeks later, plaintiff again met with Lindsay. During that meeting, plaintiff complained Baker had received preferential treatment within the department. Plaintiff cited what he believed was the request that he revise Baker's evaluation, Baker's transfer to another squad after he made the harassment complaint, and Baker's receipt of what plaintiff characterized as a "free day off." Plaintiff acknowledged it was not unreasonable to transfer an officer who had complained of workplace bullying or harassment.

Plaintiff also reported Baker allegedly had been involved in an off-duty bar fight and returned to work with a black eye. According to plaintiff, Baker advised him the incident had already been reported to jail administrators. Plaintiff further relayed information he had heard "through the grapevine" Baker previously had been arrested while employed elsewhere within County government and the incident allegedly had been ignored by administrators. Plaintiff admitted he possessed no firsthand knowledge concerning Baker's alleged arrest.

On July 1, 2017, Lieutenant Stephen Prince informed plaintiff an investigation had been opened concerning Baker's evaluation. Prince directed plaintiff to submit a Special Report explaining why he had relied on information supplied by other officers in evaluating Baker instead of his own observations.

5

Plaintiff responded by reiterating other officers had reported Baker's conduct, but Baker had admitted the issue and agreed to correct it. Prince later requested a second report because plaintiff had not answered whether he routinely relied on other officers' observations when preparing evaluations.

Plaintiff repeatedly complained to Lindsay that the investigation was retaliatory. Lindsay advised plaintiff the Human Resources interviews remained confidential. Plaintiff acknowledged he possessed no evidence Lindsay had disclosed plaintiff's complaints about Baker to jail administrators. The investigation remained open for several months while administration gathered additional information and was ultimately closed without discipline.

On June 28, 2017, plaintiff and Sergeant Robert Leininger reported concerns that Officer Scott McGonagle had used excessive force against a handcuffed inmate by "sweeping" the inmate's legs and forcing him to the ground. Plaintiff described the inmate as verbally disruptive immediately before the incident.

An investigation was opened regarding the excessive-force allegation. During the investigation, plaintiff and Leininger were directed to explain why they permitted McGonagle to continue escorting the inmate alone after they allegedly observed excessive force. Prince concluded plaintiff and Leininger

6

had failed to respond appropriately because they risked exposing the inmate to additional force after witnessing alleged misconduct. The investigation resulted in a finding McGonagle's conduct complied with departmental policy. Plaintiff was not disciplined.

Beginning in July 2017, plaintiff became the subject of several additional investigations. One arose from inmate complaints plaintiff had improperly moved an inmate whose sink had malfunctioned and he had denied inmates' recreation time. Plaintiff disputed the allegations and explained the inmate transfer had been motivated by concerns regarding property damage. The investigation concluded in a "not sustained" finding and no discipline, although administrators recommended training regarding recreation-time procedures.

Another dispute arose after plaintiff circulated an email criticizing certain inmate movement practices within the facility. Prince responded that plaintiff's email violated departmental procedures governing dissemination of information and later distributed an email to supervisory personnel explaining the challenged practice remained permissible. Plaintiff considered Prince's response embarrassing and demeaning.

A-3807-23

Plaintiff also received a Guardian Tracking entry[2] after arriving approximately thirty minutes late to work in September 2017. Plaintiff said he was late because he had overslept and used compensatory time to cover the missed time. Plaintiff believed other officers had not received comparable treatment through Guardian Tracking entries.

In February 2018, plaintiff became the subject of Internal Affairs Investigation 18-08 after an inmate alleged plaintiff had used derogatory language and referred to inmates using insulting terms. During the investigation, plaintiff admitted referring to an entire housing unit as "pussies" after inmates damaged the day room. Although investigators did not sustain all allegations made by the inmate, they concluded plaintiff had violated departmental standards by engaging in conduct unbecoming an officer.

While Internal Affairs Investigation 18-08 progressed, plaintiff continued to interact with the complaining inmate despite instructions from Lombardo to avoid unnecessary contact. Lombardo subsequently prepared a report expressing concern regarding plaintiff's continued interactions with the inmate

---

[2] The Guardian Tracking system is a computerized system containing information regarding each corrections officers' performance.

despite supervisory directives. Following a disciplinary hearing, plaintiff received an eight-day suspension.

In September 2018, plaintiff became involved with other officers attempting to determine whether Captain Magill routinely arrived late, left early, and improperly received compensation for time not worked. Plaintiff admitted he had reviewed departmental records and participated in efforts by several sergeants to investigate Magill's alleged "time stealing."

Plaintiff and other sergeants were disciplined for conducting an unauthorized investigation while on duty, using County resources for that purpose, failing to report concerns through the chain of command, and not being fully candid regarding their involvement. Following disciplinary proceedings, plaintiff received a twenty-five-day suspension.

Plaintiff also was investigated after an inmate was unnecessarily detained when she should have been released. Plaintiff acknowledged he had approved paperwork that resulted in the inmate's improper detention. Although plaintiff believed the discipline against him was excessive because another supervisor also had been involved, he conceded the inmate's wrongful detention was at least partially attributable to his own processing error.

A-3807-23

In March 2019, plaintiff received a Guardian Tracking entry after approving his own compensatory leave, which generated the need for overtime coverage. Plaintiff admitted approving his own leave request but maintained the practice was common among sergeants.

Plaintiff subsequently filed a Law Division action alleging the various investigations, disciplinary actions, and workplace interactions were motivated not by legitimate supervisory concerns but instead were retaliation for his complaints concerning Baker, McGonagle, and Magill. Defendants moved for summary judgment.

On June 25, 2024, the court issued a written decision and entered an order granting defendants' summary judgment motion and dismissing plaintiff's complaint with prejudice. In reaching that determination, the court reviewed the undisputed facts as to each of plaintiff's allegations and found he did not meet his burden of establishing a prima facie case under CEPA. The court found plaintiff lacked an objectively reasonable belief the request he had received regarding Baker's evaluation violated any law, rule, regulation, or clear mandate of public policy because Campbell merely sought clarification and additional support for plaintiff's evaluation comments. The court further concluded that plaintiff's report concerning Baker's alleged involvement in a bar fight did not

10

constitute protected conduct. Plaintiff acknowledged Baker had informed him that the administration was already aware of the incident, and no departmental policy required employees to report an off-duty altercation that neither involved law enforcement nor interfered with job responsibilities.

The court found plaintiff's reports concerning Officer McGonagle's alleged excessive force and Captain Magill's alleged "stealing time" constituted protected whistleblowing activity under CEPA. However, the court concluded plaintiff had failed to demonstrate any actionable adverse employment action or causal connection between the protected conduct and the challenged investigations leading to discipline.

The court determined that even if plaintiff had demonstrated a prima facie case under CEPA, his claim was barred by the one-year statute of limitations because, with the exception of plaintiff's September 2018 report regarding Magill, the alleged protected activities occurred more than one year before plaintiff filed suit.

## II.

## A.

We review a grant or denial of summary judgment de novo, applying the same legal standard as the trial court. Crisitello, 255 N.J. at 218. That standard

requires us to "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)). "Summary judgment should be granted . . . 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). "We owe no deference to conclusions of law that flow from established facts." Crisitello, 255 N.J. at 218.

We review a trial court's order denying a reconsideration motion based on an abuse of discretion standard. Branch, 244 N.J. at 582. "An abuse of discretion 'arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (internal quotation marks omitted)). A motion for reconsideration should be granted solely in "those cases which fall into that

12

narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative competent evidence." Castano v. Augustine, 475 N.J. Super. 71, 78 (App. Div. 2023) (alterations in original) (quoting Triffin v. SHS Grp., LLC, 466 N.J. Super. 460, 466 (App. Div. 2021)).

CEPA prohibits an employer from taking any retaliatory action against an employee who:

> c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:
>
> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law, including any violation involving deception of, or misrepresentation to, any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity . . . ;
>
> (2) is fraudulent or criminal, including any activity, policy or practice of deception or misrepresentation which the employee reasonably believes may defraud any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity; or
>
> (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

13

[N.J.S.A. 34:19-3(c).]

"The Legislature enacted CEPA to protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct." Allen v. Cape May Cnty., 246 N.J. 275, 289 (2021) (quoting Dzwonar v. McDevitt, 177 N.J. 451, 461 (2003)) (internal quotation marks omitted).

B.

To establish a claim under N.J.S.A. 34:19-3(c), a plaintiff must demonstrate:

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3(c); (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.
>
> [Id. at 290 (quoting Dzwonar, 177 N.J. at 462).]

The plaintiff is not required to prove the employer violated the law, rule, regulation, or public policy, only that he or she had a reasonable belief the violation occurred. Ibid. But a court "'must be alert to the sufficiency of the factual evidence and to whether the acts complained of could support the finding

that the complaining employee's belief was a reasonable one,' and 'must take care to ensure that the activity complained about meets this threshold.'" Chiofalo v. State, 238 N.J. 527, 543 (2019) (quoting Battaglia v. United Parcel Serv., Inc., 214 N.J. 518, 558 (2013)).  "Vague and conclusory complaints, complaints about trivial or minor matters, or generalized workplace unhappiness are not the sort of things that the Legislature intended to be protected by CEPA." Allen, 246 N.J. at 290 (quoting Battaglia, 214 N.J. at 559).

Once a plaintiff who claims the employer took an adverse employment action as a pretext for discrimination establishes the four required CEPA elements, the burden of persuasion shifts to the employer to "advance a legitimate, nondiscriminatory reason for the adverse conduct against the employee." Klein v. Univ. of Med. & Dentistry of N.J., 377 N.J. Super. 28, 38 (App. Div. 2005); see also Allen, 246 N.J. at 290-91.  "If such reasons are proffered, plaintiff must then raise a genuine issue of material fact that the employer's proffered explanation is pretextual." Klein, 377 N.J. Super. at 39.

C.

We discern no error in the court's order granting defendants summary judgment predicated on plaintiff's failure to establish a prima facie CEPA claim.

Plaintiff's complaint regarding supervisory response to his evaluation of Baker does not satisfy CEPA's first two elements. The record demonstrates plaintiff was asked to clarify whether certain comments concerning Baker's alleged "skating" were based on plaintiff's own observations and whether those observations had been documented. The request neither directed plaintiff to falsify the evaluation nor required him to remove the comments. Rather, supervisors sought clarification and supporting documentation.

Plaintiff identifies no statute, regulation, or clear mandate of public policy prohibiting supervisors from requesting additional support for an employee evaluation. At bottom, the dispute concerned management's review of an internal personnel document. Such disagreements regarding internal administrative practices do not constitute whistleblowing activity protected by CEPA. See Hitesman v. Bridgeway, Inc., 218 N.J. 8, 31-33 (2014).

Similarly, plaintiff's report concerning Baker's alleged off-duty bar fight does not qualify as CEPA-protected activity. Plaintiff acknowledged Baker told him the incident had already been reported to administration. Plaintiff failed to identify any law, regulation, or departmental policy requiring additional reporting of the incident under such circumstances. The record contains no competent evidence Baker was arrested or otherwise engaged in conduct

16

implicating any legal obligation plaintiff reasonably could have believed was being violated.

We agree plaintiff's report concerning Officer McGonagle's alleged use of excessive force is protected conduct under CEPA. Allegations that a correctional officer unnecessarily used force against an inmate implicate public safety and the lawful operation of a correctional institution under its governing standards and public policy. Likewise, plaintiff's participation in vetting allegations that Captain Magill was improperly receiving compensation for time not worked concerns the potential misuse of public resources and governmental authority. Such complaints fall within the type of whistleblowing activity CEPA was designed to protect.

D.

However, notwithstanding evidence plaintiff engaged in protected conduct, he failed to establish the required adverse employment action to sustain a CEPA claim.

CEPA defines retaliatory action as "discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." N.J.S.A. 34:19-2(e). Although conduct short of discharge or demotion may qualify, not every workplace

17

disagreement, investigation, reprimand, or criticism constitutes an actionable employment action. See Hancock v. Borough of Oaklyn, 347 N.J. Super. 350, 360-61 (App. Div. 2002). The conduct must be sufficiently substantial to alter the employee's compensation, rank, or the employee's "terms and conditions of employment." Beasley v. Passaic Cnty., 377 N.J. Super. 585, 608 (App. Div. 2005) (quoting Klein, 377 N.J. Super. at 38). Disciplinary investigations resulting from admitted misconduct do not become retaliatory merely because discipline is imposed. Id. at 607.

Many of the actions identified by plaintiff resulted in no discipline whatsoever. Several investigations concluded without findings against him. The internal emails plaintiff viewed as critical, along with supervisory scrutiny, Guardian Tracking entries, and other administrative documentation, did not result in any change to plaintiff's compensation, rank, benefits, or job duties.

We are unconvinced by plaintiff's reliance on Nardello v. Township of Voorhees, 377 N.J. Super. 428 (App. Div. 2005), and Mancini v. Township of Teaneck, 349 N.J. Super. 527 (App. Div. 2002), to demonstrate he was subject to adverse employment action. In Nardello and Mancini, there was evidence the plaintiffs were stripped of responsibilities, denied opportunities, assigned demeaning duties, or otherwise subjected to conduct materially affecting the

A-3807-23

conditions of their employment. The record here contains no comparable evidence.

Plaintiff also contends the formal discipline against him resulting from several investigations constitutes CEPA-required adverse employment action. However, the record demonstrates those disciplinary matters followed admitted policy violations. Plaintiff acknowledged, among other things, calling inmates derogatory names, participating while on duty in an unauthorized investigation into Magill's "time-stealing" using County resources, approving his own leave time, and committing the processing error that resulted in an inmate's improper detention.

CEPA does not authorize courts to second-guess discipline imposed after an employee either admitted or was found to have committed policy violations following investigation. Beasley, 377 N.J. Super. at 607. Further, although a suspension may qualify as adverse employment action, a plaintiff still bears the burden of demonstrating the discipline was retaliatory rather than the legitimate consequence of admitted misconduct. Klein, 377 N.J. Super. at 38. The undisputed record does not support a conclusion that any discipline against plaintiff was retaliatory.

E.

Plaintiff also failed to establish causation between the alleged CEPA-protected conduct and any alleged adverse employment action. The causal-connection element of CEPA "can be satisfied by inferences that the trier of fact may reasonably draw based on circumstances surrounding the employment action." Maimone v. City of Atl. City, 188 N.J. 221, 237 (2006).

"The temporal proximity of employee conduct protected by CEPA and an adverse employment action is one circumstance that may support an inference of a causal connection." Ibid. "Only where the facts of the particular case are so 'unusually suggestive of retaliatory motive' may temporal proximity, on its own, support an inference of causation. Where the timing alone is not 'unusually suggestive,' the plaintiff must set forth other evidence to establish the causal link." Young v. Hobart W. Grp., 385 N.J. Super. 448, 467 (App. Div. 2005) (first quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997); and then citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280-81 (3d Cir. 2000)).

To prove causation here, plaintiff relied on temporal proximity and his subjective belief that administration retaliated against him after he raised concerns regarding Baker, inmate treatment, and Captain Magill. However, the

A-3807-23

investigations and disciplinary actions challenged by plaintiff largely arose from independent events such as inmate complaints, admitted policy violations and plaintiff's internal administrative errors. The record contains no evidence the investigations and discipline were prompted by plaintiff's report of excessive force or his participation in reporting allegations concerning Magill. Further, although temporal proximity may support an inference of causation in some circumstances, "close timing alone" is generally insufficient where, as here, the employer presents substantial evidence of legitimate reasons for discipline. Hancock, 347 N.J. Super. at 360-61.

Nor does plaintiff's subjective belief that retaliation occurred create a genuine issue of material fact. Conclusory assertions unsupported by competent evidence are insufficient to defeat summary judgment. Dickson v. Cmty. Bus Lines, Inc., 458 N.J. Super. 522, 533 (App. Div. 2019). Defendants demonstrated legitimate, non-retaliatory reasons for the challenged actions, and plaintiff failed to produce evidence from which a rational factfinder could conclude those reasons were pretextual.

III.

We depart from the court's reasoning only on its alternative statute-of-limitations analysis. CEPA requires an action be commenced within one year

21

of "a violation of any of the provisions of this act." N.J.S.A. 34:19-5. Thus, a CEPA claim does not accrue until the employee suffers the adverse employment action. Green v. Jersey City Bd. of Educ., 177 N.J. 434, 448 (2003). In other words, the limitations period runs from the alleged retaliatory action, not from the underlying whistleblowing conduct.

Because the relevant inquiry focuses on the retaliatory act rather than the protected conduct itself, the court erroneously measured the limitations period from the dates plaintiff engaged in alleged whistleblowing activity. That error, however, does not alter the outcome because plaintiff failed to establish a prima facie CEPA claim. Moreover, because we conclude plaintiff failed to establish a prima facie claim, we need not address plaintiff's secondary claim that otherwise time-barred instances of alleged retaliation are nonetheless actionable by virtue of the continuing violation doctrine. See Roa v. Roa, 200 N.J. 555, 566 (2010) (quoting Wilson v. Wal-Mart Stores, 158 N.J. 263, 272 (1999)) (requiring demonstration of a "continual, cumulative pattern of tortious conduct" for the continuing violation doctrine to apply).

For these reasons, we affirm the orders granting defendants' summary judgment motion and denying plaintiff's reconsideration motion. Having carefully reviewed the record and the parties' remaining arguments, we conclude

22

they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division