**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4206-19

CALVIN M. ANDERSON,

    Plaintiff-Appellant,

v.

CITY OF EAST ORANGE,
EAST ORANGE POLICE
DEPARTMENT, ANTHONY
COOK, SHEILAH COLEY
and PHYLLIS BINDI,

    Defendants-Respondents.

_____

Submitted December 1, 2021 – Decided March 15, 2022

Before Judges Gilson, Gooden Brown, and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-7691-17.

McOmber McOmber & Luber, PC, attorneys for appellant (R. Armen McOmber and Austin B. Tobin, on the briefs).

Tracey S. Cosby, attorney for respondents City of East Orange, East Orange Police Department, Phyllis Bindi and Sheilah Coley.

Weiner Law Group LLP, attorneys for respondent Anthony Cook (Sean M. Pena, of counsel and on the brief; Rachel E. Smith, on the brief).

PER CURIAM

When he was employed as a lieutenant by defendant East Orange Police Department (EOPD), plaintiff filed the initial complaint in this lawsuit, alleging defendants the City of East Orange, EOPD, and Anthony Cook, who was his supervisor, had violated the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14. He based his case on Cook's "productivity" improvement system, plaintiff's complaints about it being an illegal arrest quota system and refusal to implement it, and Cook's subsequent allegedly retaliatory actions. After he was promoted to captain, plaintiff filed an amended complaint, alleging an additional CEPA violation based on the promotion process and naming as additional defendants Sheilah Coley and Phyllis Bindi due to their alleged actions in that process.

Plaintiff appeals orders granting defendants' summary-judgment motions. We affirm those orders as to the allegations contained in the amended complaint regarding the promotion process and Coley's and Bindi's alleged actions in that process. We reverse the aspect of the orders granting summary judgment as to the allegations set forth in the original complaint based on Cook's purported

actions because a genuine issue of material fact exists as to whether plaintiff suffered an "adverse employment action" as a result of retaliatory actions allegedly taken by Cook. In sum, we affirm in part as to the new allegations in the amended complaint, reverse in part as to the allegations in the initial complaint, and remand for further proceedings consistent with this opinion.

I.

We discern the facts from the summary judgment record, viewing them in the light most favorable to plaintiff, the party who opposed summary judgment. See Richter v. Oakland Bd. of Educ., 246 N.J. 507, 515 (2021) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)).

Plaintiff has been employed by defendant EOPD for over twenty years. He was employed as a lieutenant when he initiated this lawsuit and was promoted to captain about five months later. At the time of the events at issue, defendant Anthony Cook was plaintiff's supervisor; defendant Sheilah Coley was EOPD's Public Safety Director; and defendant Phyllis Bindi was EOPD's Chief of Police.

In his one-count complaint, plaintiff claimed defendants Cook, the City of East Orange, and EOPD had violated CEPA. According to the allegations set forth in the complaint, plaintiff believed the officer "productivity" improvement

system Cook had ordered plaintiff and others to implement was really an illegal arrest quota system in violation of N.J.S.A. 40A:14-181.2; plaintiff had complained about it and had refused to implement it; because of plaintiff's complaints and refusal to implement the quota system, Cook had "subjected [p]laintiff to severe and pervasive instances of retaliation," including: ordering a neglect-of-duty investigation in connection with plaintiff's alleged failure to complete an accident-reconstruction report, submitting a complaint to internal affairs about that incident even though the investigating officer had concluded plaintiff was correct in not submitting the report, stating to others plaintiff would never be promoted to captain, requiring plaintiff to increase "productivity" in terms of other officers' stops and arrests in a crime zone, issuing plaintiff a written "warning notice" for not increasing "productivity," threatening to file neglect-of-duty charges against plaintiff for not filing a line-of-duty incident report regarding another officer even though it was the responsibility of a sergeant to submit the report, instructing another captain to investigate plaintiff for failing to report to a lineup for a July Fourth celebration, threatening to issue plaintiff a written warning for that purported failure, and, in an attempt to make him look incompetent, berating plaintiff in front of the city's mayor and Coley

for allegedly neglecting his duty and wasting taxpayer money by not seeing shooting suspects walk past EOPD's video cameras.

Plaintiff subsequently filed an amended complaint, naming Coley and Bindi as defendants and making an additional retaliation allegation: five months after he filed the complaint, Bindi told him EOPD was "skipping" over him to promote other lieutenants to captain, but after plaintiff complained to Bindi and an East Orange councilperson, he was promoted to captain the next day.

Defendants EOPD, City of East Orange, Bindi, Coley, and Cook moved for summary judgment. Defendants argued plaintiff was mistaken in thinking EOPD was implementing an illegal quota system. Instead, EOPD intended to use information regarding the number of arrests and citations as one, but not the sole, criteria in evaluating an officer's performance, which, they argued, was permissible under N.J.S.A. 40A:14-181.2. Cook asserted plaintiff had "misinterpreted" his push for high performance goals and "did not like having to increase his workload and do what he [was] tasked with." Defendants also contended plaintiff had not suffered any adverse employment action because he had been promoted to captain and, thus, could not establish a prima facie CEPA case.

In opposition, plaintiff argued that after complaining about the quota system, he suffered baseless investigations, was issued written warnings, was constantly threatened with discipline, and was deliberately made to look like an incompetent police officer. He also claimed as a form of retaliation he had been "consistently assigned" to the midnight shift since June 2018, thereby preventing him from working "traffic details," which caused him to lose $10,000 to $12,000 in compensation.

After hearing oral argument, the motion judge granted defendants' motions and placed his decision on the record. As to the first prong of CEPA, the judge found plaintiff reasonably had believed EOPD was implementing a quota system and that the "alleged unlawful conduct" had a "substantial nexus to [N.J.S.A. 40A]:14-181.2." As to the third prong, the motion judge determined the retaliatory acts alleged by plaintiff were not "sufficiently severe or pervasive" and had not "alter[ed] [plaintiff's] employment position . . . in an important and material manner." The judge found, for example, plaintiff had not demonstrated a decrease in salary or status or a material alteration in his work environment. Noting plaintiff had been promoted to captain, the motion judge concluded the alleged retaliatory conduct did not "meet a standard that a reasonable juror could find that the terms of these acts are retaliatory in a

6

material sense of . . . his employment." The judge did not address the other prongs of CEPA. The motion judge subsequently issued two orders granting defendants' summary-judgment motions.

On appeal, plaintiff asserts the motion judge erred in granting summary judgment because a genuine issue of material fact exists as to whether the alleged adverse employment actions taken against him combine to make up a pattern of retaliatory conduct in violation of CEPA, citing Green v. Jersey City Bd. of Educ., 177 N.J 434, 448 (2003). In response, defendants argue the motion judge properly granted their motions because plaintiff had failed to establish the required elements of a CEPA claim.

## II.

We review a grant of summary judgment de novo, using "the same standard that governs the motion judge's" decision. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018). "That standard mandates that summary judgment be granted 'if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189,

199 (2016) (quoting R. 4:46-2(c)). "An issue of material fact is 'genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'" Grande v. St. Clare's Health Sys., 230 N.J. 1, 24 (2017) (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). In our review, we owe "no special deference" to the trial court's legal analysis. RSI Bank, 234 N.J. at 472.

The Legislature designed CEPA to "protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct." Abbamont v. Piscataway Twp. Bd. of Educ., 138 N.J. 405, 431 (1994); see also Allen v. Cape May Cnty., 246 N.J. 275, 289 (2021). CEPA's purpose is "to protect whistleblowers from retaliation by employers." Lippman v. Ethicon, Inc., 222 N.J. 362, 378 (2015). Consistent with that purpose, CEPA "is considered remedial legislation entitled to liberal construction." Ibid.

CEPA prohibits an employer from taking "any retaliatory action against an employee because the employee . . . [d]isclose[d] . . . to a supervisor . . . an activity, policy or practice of the employer . . . that the employee reasonably believe[d] . . . [was] in violation of a law, or a rule or regulation promulgated

pursuant to law," N.J.S.A. 34:19-3(a)(1), or "[o]bject[ed] to, or refuse[d] to participate in any activity, policy or practice which the employee reasonably believe[d] . . . [was] in violation of a law, or a rule or regulation promulgated pursuant to law," N.J.S.A. 34:19-3(c)(1). See also Allen, 246 N.J. at 290; Turner v. Associated Humane Soc'ys, Inc., 396 N.J. Super. 582, 598 (App. Div. 2007).

To establish a prima facie claim under CEPA, a plaintiff must demonstrate:

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3(c); (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.
>
> [Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003)].

See also Allen, 246 N.J. at 290. When a plaintiff establishes a prima facie claim under CEPA, the burden of persuasion shifts to the defendant employer "to rebut the presumption of discrimination by articulating some legitimate nondiscriminatory reason for the adverse employment action." Kolb v Burns, 320 N.J. Super. 467, 478 (App. Div. 1999); see also Allen, 246 N.J. at 290-91. If the employer meets that burden, the plaintiff then must prove the employer's

asserted legitimate reasons were pretextual and not the real reason for the employer's discriminatory acts. Allen, 246 N.J. at 291.

We focus on the third prong – whether defendants took an adverse employment action against plaintiff – because the motion judge granted defendants' motions based on his finding that plaintiff had failed to establish that prong. In addition to "discharge, suspension, [and] demotion," CEPA includes in its definition of "'[r]etaliatory action' . . . other adverse employment action taken against an employee in the terms and conditions of employment." See N.J.S.A. 34:19-2(e). Thus, an employer's action that is less than a discharge, suspension, or demotion may be an actionable retaliatory action under CEPA. Nardello v. Twp. of Voorhees, 377 N.J. Super. 428, 433-34 (App. Div. 2005); see also Mancini v. Twp. of Teaneck, 349 N.J. Super. 527, 564-65 (App. Div. 2002) (assignment to different or less desirable tasks may constitute adverse employment action and establish prima facie case of retaliation), aff'd as modified, 179 N.J. 425 (2004). Moreover, under CEPA, retaliation "need not be a single discrete action." Green, 177 N.J. at 448. "[M]any separate but relatively minor instances of behavior directed against an employee that may not be actionable individually but that combine to make up a pattern of retaliatory conduct" may constitute an adverse employment action under CEPA.

A-4206-19

Ibid.; see also Maimone v. City of Atl. City, 188 N.J. 221, 236 (2006); Nardello, 377 N.J. Super. at 435; Beasley v. Passaic Cnty., 377 N.J. Super. 585, 608-09 (App. Div. 2005).

That an employment action makes an employee unhappy does not automatically make it an adverse employment action under CEPA. Nardello, 377 N.J. Super. at 434. "CEPA's purpose is to prevent retaliatory action against whistle-blowers, . . . not to 'assuage egos or settle internal disputes at the workplace.'" Beasley, 377 N.J. Super. at 607 (quoting Klein v. Univ. of Med. & Dentistry of N.J., 377 N.J. Super. 28, 45 (App. Div. 2005)). A "bruised ego or injured pride on the part of the employee" is insufficient to establish retaliatory action. Klein, 377 N.J. Super. at 46. "[T]o be actionable, an allegedly retaliatory act must be 'sufficiently severe or pervasive to have altered plaintiff's conditions of employment in an important and material manner.'" El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 176 (App. Div. 2005) (quoting Cokus v. Bristol-Myers Squibb Co., 362 N.J. Super. 245, 246 (App. Div. 2003)). A "rescinded employer action that makes plaintiff completely whole and remedies a prior decision cannot constitute an adverse employment action." Beasley, 377 N.J. Super. at 607.

The additional retaliatory act plaintiff alleged in the amended complaint – Bindi told him EOPD was "skipping" over him to promote other lieutenants to captain – does not constitute an adverse employment action under CEPA because that action was rescinded and plaintiff was made completely whole from that action when he was promoted to captain the next day. See Beasley, 377 N.J. Super. at 607. Accordingly, we affirm the aspect of the motion judge's decision granting defendants' summary-judgment motions as to that allegation of retaliation pleaded in the amended complaint and the related allegations concerning Bindi and Coley.

As to the claims based on Cook's retaliatory acts plaintiff alleged in his initial complaint, we reverse summary judgment. The evidence as to those acts, when viewed in a light most favorable to plaintiff, shows genuine issues of material fact as to whether he suffered retaliatory action by defendants. A jury could conclude that after plaintiff complained about Cook's new "productivity" system being an illegal arrest quota system, Cook repeatedly took action retaliating against plaintiff, including ordering investigations that resulted in no charges against plaintiff, filing an internal affairs complaint against plaintiff even though the investigating officer had concluded plaintiff had done nothing wrong, threatening to file other charges against him, and denigrating him to

A-4206-19

others, including the mayor. Although those actions individually may not be actionable, we are satisfied a jury could conclude those actions combine to demonstrate a pattern of prohibited retaliatory conduct.

Contrary to the motion judge's conclusion, viewed in a light most favorable to plaintiff, a jury also could conclude plaintiff has demonstrated economic loss, a decrease in status, or a material alteration in his work environment. That he was promoted to captain five months after he filed the complaint does not make him whole from or constitute a rescission of the other alleged acts of retaliation. Plaintiff asserted in his complaint he sustained damages as a result of those alleged retaliatory acts. In his certification in opposition to the summary-judgment motions, plaintiff testified "the constant threats and blatant retaliation by [d]efendant EOPD, and specifically [d]efendant Cook, [had had] a profound impact on [his] health and well-being and [had] caus[ed him] constant emotional distress," including "anxiety, loss of sleep, mental anguish, humiliation, and the like." He certified he had suffered "concrete economic damages" of approximately $10,000 to $12,000, contending that beginning about two months after his promotion, he has been "consistently assigned to the midnight shift," which caused him economic damages because he was unable "to work traffic details that [he] would have had the opportunity

to work had [he] remained in another shift." Plaintiff also certified that because of the "ongoing denigration," he has been "subjected to disrespect and insubordination by subordinate officers." Plaintiff may have a higher salary now as a captain than he had as a lieutenant but that does not render meaningless the combined impact of the alleged previous acts of retaliation. See Nardello, 377 N.J. Super. at 436 (reversing summary judgment, court found a plaintiff whose pay was not reduced still had made out a prima facie case of a CEPA violation).

We recognize "an investigation of an employee is not normally considered retaliation" and that only a "strong showing" that an investigation was illegitimate may allow "an affirmative CEPA claim." Beasley, 377 N.J. Super. at 606-07. Here, plaintiff has shown evidence from which a jury might conclude that after his whistle-blowing activity EOPD and Cook pursued false accusations and unnecessary investigations against him.

Defendant's reliance on Keelan v. Bell Communications Research, 289 N.J. Super. 531, 539 (App. Div. 1996), and Hancock v. Borough of Oaklyn, 347 N.J. Super. 350, 360 (App. Div. 2002), in their effort to limit what can constitute a retaliatory act under CEPA, is misplaced. Both cases were decided before our Supreme Court's decision in Green, 177 N.J. 434, and the other cases that make clear retaliatory action under CEPA is not, as defendants assert, limited to

"completed personnel actions that have an effect on either compensation or job rank."

We turn briefly to the motion judge's decision regarding CEPA's first prong: whether plaintiff "reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy." Dzwonar, 177 N.J. at 462. Defendants did not cross-appeal but nevertheless argue the motion judge erred in finding plaintiff reasonably had believed EOPD was implementing a quota system and that the "alleged unlawful conduct" had a "substantial nexus to [N.J.S.A. 40A]:14-181.2." We see no basis to reverse that aspect of the decision.

To satisfy CEPA's first prong, a plaintiff does not need to establish his or her employer or other employee "actually violated" a law but instead must demonstrate his or her own reasonable belief that a law was violated. Ibid.; see also Allen, 246 N.J. at 290. As the motion judge correctly found, plaintiff met that standard and therefore the issue should be decided by a jury.

In addition to their arguments about prongs one and three of CEPA, the parties argue about issues not decided by the motion judge. We do not know if those issues were not decided by the trial judge because he did not reach them given his conclusion regarding prong three or because they were not raised.

Either way, they are not properly before us.  See Murphy v. Luongo, 338 N.J. Super. 260, 268 (App. Div. 2001) (noting an issue not raised or decided in the trial court below is not properly before an appellate court).

Affirmed in part; reversed in part; and remanded for proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION